JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Donald Bailey, appeals the trial court's granting summary judgment to defendant, Fifth Third Bank, the tenant of property owned by defendant, River Properties.
 {¶ 2} On January 27, 2003, plaintiff arrived at the bank to make his usual night deposit.[1] It had snowed and plaintiff was aware of approximately three to four inches of snow piled on either side of the sloped entranceway to the Bank. The walkway to the bank entrance had handrails on both sides.
 {¶ 3} As he walked from the parking lot to the sloped walkway, plaintiff had to traverse a flat area abutting the walkway. Before he could reach the walkway and handrail, plaintiff slipped and fell on ice or water that had accumulated on the flat surface at the base of the walkway.
 {¶ 4} As a result of injuries sustained in the fall, plaintiff filed suit against the defendants and alleged that they had been negligent in the maintenance of the property. Defendants filed a motion for summary judgment in which they argued that the ice was an open and obvious danger that plaintiff failed to appreciate. The trial court agreed and granted defendants summary judgment. This appeal followed in which plaintiff presents two assignments of error, the first of which states:
I. A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO WHETHER THE AREA WHERE PLAINTIFF FELL HAD AN UNNATURAL ACCUMULATION OF ICE AND WAS AN OPEN AND OBVIOUS DANGER.
 {¶ 5} Plaintiff argues that defendants were not entitled to summary judgment because a genuine issue of material fact remains as to whether the ice he fell on was open and obvious.
 {¶ 6} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 7} "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Mubarak v. Giant Eagle, Inc., Cuyahoga App. No. 84179, 2004-Ohio-6011, ¶ 12, citing Dresher v.Burt (1996), 75 Ohio St.3d 280, 296, 1996-Ohio-107,662 N.E.2d 264. Alternatively, "[t]he nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings." Id., citing Dresher, 293. The nonmoving party must set forth "specific facts" showing a genuine issue for trial exists. Id.
 {¶ 8} On appeal, this court conducts a de novo review of the trial court's granting of summary judgment. Mubarak, ¶ 13, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. A de novo review requires this court to evaluate the evidence "* * * in a light most favorable to the nonmoving party * * *." Id.
 {¶ 9} In order to prove a negligence claim, a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach of duty proximately caused the plaintiff's injury. Id., citing Texler v. D.O. Summers Cleaners Shirt Laundry Co.
(1998), 81 Ohio St.3d 677, 680, 1998-Ohio-602, 693 N.E.2d 271.
 {¶ 10} "Whether a duty exists is a question of law for the court to determine. Mussivand v. David (1989),45 Ohio St.3d 314, 318, 544 N.E.2d 265. The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability. Jeffers v. Olexo (1989), 43 Ohio St.3d 140,142, 539 N.E.2d 614. If no duty exists, the legal analysis ends and no further inquiry is necessary. Gedeon v. East Ohio Gas.Co. (1934), 128 Ohio St. 335, 338, 190 N.E. 924, 40 Ohio L.Rep. 649." Id., ¶ 14.
 {¶ 11} "Generally, `business owners have a duty to provide a reasonably safe ingress and egress for business invitees.'Garson v. Fast Food Operations, Inc. (July 29, 1993), 1993 Ohio App. LEXIS 3720, Cuyahoga App. No. 64923, unreported (internal quotation omitted)." Karcher v. Zeisler-Morgan Props., (Dec. 26, 1996), Cuyahoga App. No. 70199, 1996 Ohio App. LEXIS 5824, *4-*5.
 {¶ 12} In Ohio, however, there is no duty owed to an invitee to remove natural accumulations of ice and snow resulting typically from "freeze and thaw cycles which commonly cause ice formations * * *." Mubarak, ¶ 18, citing Hoenigman v.McDonald's Corp. (Jan. 11, 1990), Cuyahoga App. No. 56010, 1990 Ohio App. LEXIS 131, *4-*5, citing Lopatkovich v. Tiffin
(1986), 28 Ohio St.3d 204, 206-207, 503 N.E.2d 154. Generally, ice formations "are considered to be natural accumulations absent a showing of negligence on the part of the landowner or occupier." Id.; see, Karcher, supra; Kirschnick v. Jilovec,
(Aug. 31, 1995), 1995 Ohio App. LEXIS 3773, Cuyahoga App. No. 68037, unreported."
It is well-settled [sic] that there is no general duty upon an occupier of land to warn invitees on the property against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them. Sidle v. Humphrey (1968),13 Ohio St.2d 45, 233 N.E.2d 589, syllabus; Paschal v. Rite AidPharmacy, Inc. (1985), 18 Ohio St.3d 203, 480 N.E.2d 474. "The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of [the] premises may reasonably expect that a business invitee on the premises will discover those dangers and protect himself against them." Id., syllabus at two. The rationale is that an open and obvious danger itself serves as a warning, and that "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take the appropriate measures to protect themselves." Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 644, 597 N.E.2d 504. Therefore, an owner and occupier has no duty to remove natural accumulations of ice and snow from private walks and steps on the premises. Id., syllabus at three.
Bailey v. St. Vincent DePaul Church (May 8, 1997), Cuyahoga App. No. 71629, 1997 Ohio App. LEXIS 1884, *4-*5.
 {¶ 13} As noted in Bailey, there are two exceptions to the open and obvious doctrine. "If an occupier is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on his or her premises has created a condition substantially more dangerous than a business invitee should haveanticipated by reason of the knowledge of conditions prevailinggenerally in the area, negligence may be proven. * * * A second exception to the no-duty rule exists where the owner is actively negligent in permitting or creating an unnatural accumulation ofice and snow." Id., citing Lopatkovich v. City of Tiffin
(1986), 28 Ohio St. 3d 204, 503 N.E.2d 154, emphasis added.
 {¶ 14} In Bailey, plaintiff slipped and fell on an icy walkway on defendant's property. Plaintiff alleged that the ice was not open and obvious because of particular conditions which the defendant knew about. According to plaintiff, ice falling from the church roof onto the walkway leading to the church entrance would thaw and then refreeze creating a substantially more dangerous condition than she could reasonably appreciate. On appeal, this court determined that "the freeze and thaw cycle accompanying the winter climate in northeastern Ohio" created a "natural accumulation of snow and ice." There was no evidence that defendant did anything to transform it into an unnatural accumulation.
 {¶ 15} In the case at bar, plaintiff argues that the ice he fell on was substantially more dangerous than he could reasonably appreciate. According to plaintiff, defendants "knew that the inclined walkway would create an additional hazard" and that is why "they provided railings at the sides of the walkway." Plaintiff's Brief on Appeal, 3. Plaintiff further argues that defendants did not extend the railing beyond the incline to the area connecting the parking surface. Thus defendants failed "to provide anything for business invitees to grab onto * * * when traversing the most dangerous area of the walkway, the area where water would collect and refreeze in the cold weather * * *." Id.
 {¶ 16} In order to prevail on his claim that the ice he fell on was substantially more dangerous than he could appreciate, plaintiff must produce evidence that defendants knew about the condition or should have known about it.
 {¶ 17} Plaintiff points to an employee's statement to establish that defendants knew that the area was dangerously icy and, therefore, were liable for his injuries. After plaintiff fell, Cathy Bailey, plaintiff's daughter, who had accompanied plaintiff to the bank, spoke to a bank employee who had come outside to help. According to Bailey, the employee told her, "we always have problems with ice out here. Everyone is slipping on ice out here." Bailey Deposition, 11.
 {¶ 18} Plaintiff must also demonstrate, however, that he could not have reasonably appreciated the dangerous condition on his own before he fell. In other words, if the condition of the area was something he should have been aware of, then it is an open and obvious danger, which precludes any duty by defendants.
 {¶ 19} Plaintiff admits that he was familiar with the entrance to the bank. The night he fell, plaintiff acknowledges that it had snowed, thawed and re-froze. He further acknowledged that the whole parking lot was a sheet of ice. Indeed, as he approached the walkway, plaintiff could not see the yellow lines that were painted on the walkway. His testimony is as follows:
Q: But no snow on the walkway where the cross yellow lines are?
A: It was black looking to me.
Q: So it looked wet?
A: It looked like it was wet. That's what I thought it was, wet —
Q: Okay.
A: — from what I could see, but this whole area is very dark. The only light coming out was from the lobby that I can remember. And it did snow a little bit here, but it was — and I think the lights were behind me, so where I was walking there was somewhat of a shadow, but what I can remember is there was something shinny [sic] here.
And I fell — well, later when we went back a couple of times, this spot was always wet here. But if I remember right, this here was all wet.
Plaintiff's Deposition, 20-21. Plaintiff finally stated that he "thought it was water" that he fell on. Id.
 {¶ 20} We reject plaintiff's claim that there remains a genuine issue of material fact as to "whether the area where [he] fell was observable to [him] as a hazard * * *." Plaintiff's Brief on Appeal, 5. Even though plaintiff claims that the area was poorly lit, he nonetheless acknowledges that the walkway looked black and shiny. Regardless of whether he fell on water or ice, plaintiff's daughter admitted that after she exited her vehicle to attend to him she observed the surface of the lot was icy.
 {¶ 21} Plaintiff also claims defendants knew water pooled at the base of the inclined walkway and they contributed to the hazard by not extending the railing "far enough." We reject this argument. First, there is no evidence that the railing stopped before the sloping walkway ended. At oral argument in this appeal, plaintiff pointed to a photo of the walkway, Exhibit "A." This photo, however, is not detailed enough to support this argument. Cathy Bailey, moreover, stated that even though she did not slip after she started to leave the car, she did start slipping as she "got closer to the door." Bailey Deposition, 9. She admits that she "probably" started slipping before she reached the walkway area where plaintiff was. Bailey Deposition, 12. Both plaintiff and his daughter acknowledged that the lot was so icy that the EMS vehicle was sliding when it was leaving. In other words, the ice was not limited to the base of the walkway.
 {¶ 22} The evidence demonstrates that the area where plaintiff fell constituted an open and obvious danger of which he should have been aware. Plaintiff knew it had been snowing, it was very cold, and the area towards the entrance looked black and shiny to him. He should have appreciated, therefore, the hazardous conditions. From the record before this court, reasonable minds can come to but one conclusion and that conclusion is adverse to the plaintiff.
 {¶ 23} For the foregoing reasons, the trial court did not err in granting defendants' motion for summary judgment. Plaintiff's first assignment of error is overruled.
II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS BECAUSE THE ATTENDANT CIRCUMSTANCES CREATED A GENUINE ISSUE OF MATERIAL FACT.
 {¶ 24} Plaintiff argues that the accumulation of water/ice was not open and obvious, because there were "attendant circumstances." "Attendant circumstances act as an exception that allows a plaintiff to avoid the open and obvious doctrine."Cummin v. Image Mart, Inc., Franklin App. No. 03AP-1284, 2004-Ohio-2840, ¶ 8, citing McGuire v. Sears, Roebuck Co.
(1996), 118 Ohio App.3d 494, 498, 693 N.E.2d 807.
An attendant circumstance is a factor that contributes to the fall and is beyond the control of the injured party. Backus v.Giant Eagle, Inc. (1996), 115 Ohio App.3d 155, 158,684 N.E.2d 1273. The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. See Cash v. Cincinnati (1981), 66 Ohio St.2d 319, 324,421 N.E.2d 1275. An "attendant circumstance" has also been defined to include "any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." Id., citing McGuire, supra, at 499.
 {¶ 25} In the case at bar, plaintiff argues that "all the issues involving the walkway, when taken together in their totality, (i.e. the lighting conditions, the degree of incline, the presence of defects, available drainage, etc.), provide a genuine issue of material fact as to whether the defendants knew, or should have known, that the walkway was substantially more dangerous under the weather and lighting conditions that were present" at the time of his fall. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, 4-5.
 {¶ 26} One of the "attendant circumstances" plaintiff emphasizes is that the walkway was poorly lit. Plaintiff argues that the walkway was so poorly lit that he could not appreciate that it was wet/icy. Plaintiff saw lights on inside the bank but claims that that light created a shadow that prevented him from seeing the actual condition of the walkway. This observation, however, is contradicted by plaintiff's own testimony.
 {¶ 27} Plaintiff knew that it had snowed earlier that day and that there was a thaw and another freezing, because "it was very, very cold." Plaintiff Deposition, 19. Plaintiff also stated that he could not see the yellow lines on the walkway because they were covered by ice or water. Plaintiff acknowledged that before he fell he could see that the walkway looked black and shiny. Further, Bailey's daughter testified that after she exited her car and she walked closer to the walkway, it became slippery. She testified that plaintiff had exited the car before she did. On this evidence, reasonable minds would conclude that plaintiff not only was on notice that the walkway was either wet or icy but that he also sensed the icy condition of the lot surface before he reached the walkway area. Nonetheless, plaintiff proceeded towards the bank.
 {¶ 28} Plaintiff further alleges that the walkway was defective because water pooled in various areas, including the area where he fell. Plaintiff's claim amounts to nothing more than speculation. More specifically, plaintiff has failed to present any evidence that pooling water was the unique result of the sloping walkway. Moreover, there is no evidence demonstrating any details about the walkway, for example, its dimensions or slope. What plaintiff believes to be the defective condition of the area is mere conjecture. Moreover, the description of the larger parking lot as icy suggests that the ice of the walkway was not unique.
 {¶ 29} The hearsay relating of what the bank employee said — that people have fallen on ice in the parking lot — does not provide support, because this account did not address the specific area plaintiff says was defective.
 {¶ 30} Without more, plaintiff has failed to demonstrate that there remains a genuine issue of material fact as to any of the "attendant circumstances" plaintiff says existed when he fell. Thus even if taken together, as plaintiff urges, no issue of material fact remains. Accordingly, plaintiff's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Mcmonagle, J., Concur.
[1] According to plaintiff, he had been making night deposits for about one year when the accident occurred.