JOURNAL ENTRY AND OPINION
{¶ 1} The appellants, Caryman Mubarak ("Mubarak") and her husband, Ragheb, appeal from the decision of the trial court, which granted summary judgment in favor of the appellees, Giant Eagle, Inc. and Westlake Center Associates, (hereinafter collectively referred to as the "appellee" or "Giant Eagle"), concerning a negligence claim.
 {¶ 2} Mubarak alleges that an icicle or a block of ice, which formed on Giant Eagle's illuminated outdoor sign, fell and struck her in the back and neck while she was loading her child into her vehicle that was parked in front of the store. After reviewing the arguments of the parties and for the reasons set forth below, we affirm the decision of the trial court.
 {¶ 3} The following facts are undisputed. On December 26, 2000, Caryman Mubarak was shopping at a Giant Eagle store in Westlake, Ohio. Upon entering the store, Mubarak looked up and noticed icicles or blocks of ice that had formed on the illuminated Giant Eagle store sign. She stated that the sight of the ice formations caused her no concern.
 {¶ 4} When she had finished shopping, Mubarak's mother went to get their vehicle from the parking lot while Mubarak waited with her son and their groceries at the front of the store, directly below the illuminated sign. After loading her groceries into the vehicle, Mubarak started to place her son in his car seat. While she was doing this, an object struck her in the neck and back. Mubarak stated she thought someone had thrown a drinking glass at her, but noticed pieces of ice on the ground around where she was standing and surmised the object must have been ice that fell from the illuminated sign.
 {¶ 5} Mubarak went back into the store and advised a store employee that a piece of ice fell from the roof and struck her in the back. Mubarak stated she was angry because the piece of ice that struck her could have easily struck her child instead. Mubarak stated to the store employee that she was uninjured and did not want to file an accident report.
 {¶ 6} A few days later, Mubarak went back to the Giant Eagle store claiming she had a tingling sensation in her hand and was experiencing neck and back pain. Mubarak filled out a Giant Eagle accident report and sought medical treatment for her injuries. She claims that as a result of her injuries she cannot do many things without experiencing pain, including play with or lift her children, wash laundry, or clean her home, and she always feels tired and stressed out because of the pain.
 {¶ 7} On December 26, 2002, Mubarak filed a complaint claiming Giant Eagle was negligent for failing to maintain their property in a reasonably safe condition. Included in the complaint was a claim for lost consortium filed on behalf of her husband. On October 28, 2003, Giant Eagle filed a motion for summary judgment. On January 20, 2004, the trial court granted Giant Eagle's motion for summary judgment holding that "having construed the evidence most strongly in favor of the non-moving party, reasonable minds could come to but one conclusion, there are no genuine issues of material fact that remain to be litigated and Giant Eagle is entitled to judgment as a matter of law."
 {¶ 8} On February 10, 2004, appellants filed this timely appeal alleging two assignments of error for review. We will address them together since they are interrelated.[1]
 {¶ 9} The appellants claim that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether the accumulation of ice was a natural or unnatural condition.
 {¶ 10} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 11} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356.
 {¶ 12} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard, as applied in Wing v. Anchor Medina, Ltd. of Texas
(1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying thoseportions of the record which demonstrate the absence of a genuineissue of fact or material element of the nonmoving party'sclaim." Id. at 296, (emphasis in original). The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 13} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs.
(1993), 87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46,50;Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741.
 {¶ 14} In order to defeat a motion for summary judgment on a negligence claim, a plaintiff must establish that a genuine issue of material fact remains as to whether: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach of duty proximately caused the plaintiff's injury. Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 680. Whether a duty exists is a question of law for the court to determine.Mussivand v. David (1989), 45 Ohio St.3d 314, 318. The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability. Jeffersv. Olexo (1989), 43 Ohio St.3d 140, 142. If no duty exists, the legal analysis ends and no further inquiry is necessary. Gedeonv. East Ohio Gas. Co. (1934), 128 Ohio St. 335, 338.
 {¶ 15} An owner or occupier of the premises ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. Paschal v. Rite AidPharmacy, Inc. (1985), 18 Ohio St.3d 203. A premises owner is obligated to warn invitees of latent or concealed dangers if the owner knows or has reason to know of hidden dangers. Rogers v.Sears (June 28, 2002), Hamilton App. No. C-010717.
 {¶ 16} Where a hazard is not hidden from view, or concealed, and is discoverable by ordinary inspection, a trial court may properly sustain a motion for summary judgment made against the claimant. Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49.
 {¶ 17} The open and obvious doctrine states that a premises owner owes no duty to persons entering those premises regarding dangers that are open and obvious. Sidle v. Humphrey (1968),13 Ohio St.2d 45, paragraph one of the syllabus. If a hazard is open and obvious, the plaintiff is barred from recovery because there is no duty by the owner to warn of the danger. The Ohio Supreme Court reaffirmed the open and obvious doctrine in Armstrong v.Best Buy, 99 Ohio St.3d 79, 2003-Ohio-2573. The open and obvious nature of the hazard itself serves as a warning. The owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. Simmers v. Bentley Constr. Co. (1992),64 Ohio St.3d 642, 644. By focusing on the duty prong of negligence, the court's analysis focuses on the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. Armstrong, supra at 84.
 {¶ 18} Snow and ice are part of wintertime life in Ohio.Lopatcovich v. Tiffen (1986), 28 Ohio St.3d 204,503 N.E. 2d 154. As a general rule, "dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of [the] premises may reasonably expect that a business invitee on the premises will discover those dangers and protect himself against them." Sidle v. Humphrey (1968),13 Ohio St.2d 45, 233 N.E.2d 589, paragraph two of the syllabus. Therefore, an owner or occupier owes no duty, even to a business invitee, to remove natural accumulations of ice or snow. Id. However, there are exceptions to the general rule. If an occupier is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on his or her premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area, negligence may be proven. Debie v.Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38,227 N.E.2d 603; Gober v. Thomas King, Inc. (1997), Montgomery App. No. 16248. Northeastern Ohio's freeze and thaw cycles, which commonly cause ice formations, are natural accumulations absent a showing of negligence on the part of the landowner or occupier.Hoenigman v. McDonald's Corp. (Jan. 11, 1990), Cuyahoga App. No. 56010. To become liable, the owner must have some "superior knowledge" of the existing danger or peril. LaCourse v. Fleitz
(1986), 28 Ohio St. 3d 209, 210.
 {¶ 19} A second exception to the no-duty rule exists where the owner is actively negligent in permitting or creating an unnatural accumulation of ice and snow. Lopatkovich v. City ofTiffin, supra. An "unnatural accumulation" refers to causes and factors other than winter weather's low temperatures, strong winds, drifting snow, and natural thaw and freeze cycles. By definition, an unnatural condition is man-made or man-caused. Unnatural accumulations are caused by a person doing something that would cause ice and snow to accumulate in an unexpected place or way. Porter v. Miller (1983), 13 Ohio App.3d 93,468 N.E.2d 134.
 {¶ 20} Thus, in order for the appellants to prevail on their negligence claim, they must produce evidence that either thenatural accumulation of snow and ice was substantially moredangerous than she could have appreciated and that the appellees knew or should have known this; or that the appellees wereactively negligent in permitting or creating an unnaturalaccumulation of ice and snow. See Holbrook v. Oxford HeightsCondo. Ass'n., Cuyahoga App. No. 81316, 2002-Ohio-6059; Baileyv. St. Vincent DePaul Church (May 8, 1997), Cuyahoga App. No. 71629. The appellants only raise the latter argument in this appeal.
 {¶ 21} The Giant Eagle sign in question runs on electricity, which is fed to 15MM neon bulbs from a transformer. Evidence was produced that on December 26, 2000, the temperature remained about eighteen degrees Fahrenheit from about 1:00 p.m. until about 10:00 p.m., with no material change in humidity, wind speed, or wind direction. The appellants claim that the electricity that runs though the Giant Eagle sign generated enough heat to melt the snow around the sign, which subsequently refroze and formed into icicles or ice blocks. They claim these ice formations, which fell from the sign onto Mubarak's neck and back, were unnatural man-made conditions that would constitute an exception to Ohio's snow and ice accumulation rule. We disagree.
 {¶ 22} After reviewing the record, we find that the appellants have failed to produce sufficient evidence to sustain their claim that the ice accumulation was unnatural. First, there is no evidence showing how much heat, if any, a neon sign with 15MM bulbs would produce in order to melt snow that would later form into ice. The temperature outside the store that day was eighteen degrees Fahrenheit, which would require the sign to heat up the surrounding air to at least thirtythree degrees Fahrenheit in order to melt the snow. Contrary to the appellants' claims, this type of testimony is beyond the common knowledge of an ordinary person and would require the testimony of an expert. Without an expert opinion, the origins of the ice block that struck Mubarak are merely hypothetical and speculative; the ice formations could have naturally formed on the illuminated sign because the weather could have been warmer the day before, causing the snow to melt and later refreeze when the temperature dropped that night. There was also no evidence produced that the sign was defective or operating in an unusual way.
 {¶ 23} In addition, after reviewing the photograph of the Giant Eagle sign and surrounding facade, it is unclear whether the ice formation came from the illuminated sign, the building's roof, or from the facade. All three areas appear to have ice formations. Mubarak originally reported to a Giant Eagle store employee that the block of ice that struck her had fallen from the roof; she never mentioned the illuminated sign. Therefore, it is unclear whether the icicle that struck her formed because of the illuminated sign. Any ice formation forming on the building would be considered a natural formation.
 {¶ 24} Finally, the appellants have lived in northeast Ohio for at least seventeen years and have experienced many winters. Mubarak stated in her deposition that before entering the store, she looked up and noticed the ice formations on the building and that the formations caused her no concern. This further supports the notion that the danger was open and obvious and not hidden from view.
 {¶ 25} Accordingly, we find that the appellants have failed to produce any evidence that the appellees had acted negligently in creating an unnatural accumulation of ice; therefore, the appellee owes no duty of care to the appellants when the evidence is viewed most strongly in their favor. The appellees are entitled to judgment as a matter of law.
Judgment affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Karpinski, J., concur.
[1] Appellants' two assignments of error:
"I. The record before the trial court contained genuine issue of material fact so as to preclude the granting of summary judgment."
"II. The trial court erred as a matter of law in finding that appellees' duty of care to the appellants is barred by the doctrine of open and obvious danger."