{¶ 1} Appellant, Charlesettra Goode, appeals the decision of the trial court, which granted summary judgment to appellee, Mount Gillion Baptist Church ("the church"). After a thorough review of the arguments and the pertinent law, and for the reasons set forth below, we affirm.
 {¶ 2} The incident that gave rise to the present case occurred in March 2004. According to the record, approximately one to two inches of snow fell in the Greater Cleveland area on March 12, 2004, including the area where the church is located on Cedar Avenue. As per the usual procedure after a light snowfall, the church's custodians spread deicing salt on the stairways leading to the various entrance doors of the church facility.
 {¶ 3} On the evening of March 12th, the church's main sanctuary had been reserved for a performance by the Dett Choir from the Cleveland School of the Arts. Appellant's daughter, Starr, was a member of the Dett Choir, but neither appellant nor her daughter were members of the church. Although appellant had never been inside the church before, she had seen the church's exterior and its surrounding premises prior to the day of the incident.[1]
 {¶ 4} The choir was scheduled to perform at 7:00 p.m. on March 12th, and choir members were required to arrive two hours early (by 5:00 p.m.) for dressing and rehearsal. Appellant and her daughter drove directly from appellant's workplace on the west side of Cleveland to the church on the east side. During the lengthy ride, appellant observed the slippery road conditions that prevailed in Cleveland on that day.
 {¶ 5} When they arrived at the church facility, appellant dropped her daughter off near the entrance door adjacent to the parking lot on the west side of the church and then parked her car in the parking lot. Although she observed her daughter and other choir members enter the church through the parking lot entrance, appellant attempted to enter the church through the main entrance doors. This required her to walk down the sidewalk, past the front of the church, and up the front stairway. She had not seen anyone else using the front entrance to enter the church that evening.[2]
 {¶ 6} Appellant walked up the front entrance stairway without incident and did not notice any defects as she went up the stairs.[3]
When she got to the top of the stairs, she found that the doors were locked. Unfortunately, as she descended the stairs, she slipped and fell to the bottom of the stairway and sustained injuries. She was transported to the Cleveland Clinic, where she was diagnosed with a fractured ankle. Treatment included a series of casts, surgery and physical therapy, and she was also fitted with a special shoe to provide extra support for her right ankle.
 {¶ 7} According to the record, appellant filed a complaint on June 13, 2005, which alleged that the church negligently maintained its premises and that the church's negligence was the proximate cause of her injuries. On November 28, 2005, she filed an amended complaint. The church answered and denied liability. On January 9, 2006, the church filed a motion for summary judgment; appellant filed her brief in opposition to the motion for summary judgment on January 24, 2006. The church filed a reply brief in support of its motion for summary judgment on February 3, 2006, and the lower court granted the church's motion for summary judgment on February 22, 2006.
 {¶ 8} Appellant appeals, citing five assignments of error. Because Assignments of Error I, II and V are substantially interrelated, we address them together.
 {¶ 9} "I. The trial court committed error by granting summary judgment to Mount Gillion Baptist Church although significant issues of material fact existed between the parties.
 {¶ 10} "II. The trial court committed error by granting summary judgment despite the (admitted) fact defendant had superior knowledge that an extra hazard would be encountered by invitees attempting to attend the concert through the church's front entrance doors.
 {¶ 11} "V. The trial court committed error by failing to recognize there can be more than one proximate cause, or direct causes of an injurious fall on accumulated ice and snow."
 {¶ 12} Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267.
 {¶ 13} "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Mubarak v.Giant Eagle, Inc., Cuyahoga App. No. 84179, 2004-Ohio-6011, ^{12, citingDresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-107, 662 N.E.2d 264. Additionally, "[t]he nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings." Id., citing Dresher, 293. The nonmoving party must set forth "specific facts" showing a genuine issue for trial exists. Id.
 {¶ 14} On appeal, this court conducts a de novo review of the trial court's granting of summary judgment. Mubarak, T|13, citing Brown v.Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. A de novo review requires this court to evaluate the evidence "* * * in a light most favorable to the nonmoving party * * *." Id.
 {¶ 15} In order to prove a negligence claim, a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach of duty proximately caused the plaintiff's injury. Id., citing Texler v.D.O. Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677, 680,1998-Ohio-602, 693 N.E.2d 271.
 {¶ 16} "Whether a duty exists is a question of law for the court to determine. Mussivand v. David (1989), 45 Ohio St.3d 314, 318,544 N.E.2d 265. The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability. Jeffers v.Olexo (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614. If no duty exists, the legal analysis ends and no further inquiry is necessary.Gedeon v. East Ohio Gas. Co. (1934), 128 Ohio St. 335, 338,190 N.E. 924, 40 Ohio L.Rep. 649." Id., T ¶ 14.
 {¶ 17} "Generally, `business owners have a duty to provide a reasonably safe ingress and egress for business invitees.' Garson v.Fast Food Operations, Inc. (July 29, 1993), Cuyahoga App. No. 64923, (internal quotation omitted)." Karcher v. Zeisler-Morgan Props. (Dec. 26, 1996), Cuyahoga App. No. 70199.
 {¶ 18} In Ohio, there is no duty owed to an invitee to remove natural accumulations of ice and snow that typically result from "freeze and thaw cycles which commonly cause ice formations * * *." Mubarak, T|18, citing Hoenigman v. McDonald's Corp. (Jan. 11, 1990), Cuyahoga App. No. 56010, citing Lopatkovich v. Tiffin (1986), 28 Ohio St.3d 204, 206-207,28 Ohio B. 290, 503 N.E.2d 154. Generally, ice formations "are considered to be natural accumulations absent a showing of negligence on the part of the landowner or occupier." Id.; see, Karcher, supra;Kirschnick v. Jilovec (Aug. 31, 1995), Cuyahoga App. No. 68037.
 {¶ 19} "It is well-settled that there is no general duty upon an occupier of land to warn invitees on the property against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them. Sidle v. Humphrey (1968), 13 Ohio St.2d 45,233 N.E.2d 589, syllabus; Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203, 18 Ohio B. 267, 480 N.E.2d 474. `The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of [the] premises may reasonably expect that a business invitee on the premises will discover those dangers and protect himself against them.' Id., syllabus at two. The rationale is that an open and obvious danger itself serves as a warning, and that `the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take the appropriate measures to protect themselves.' Simmers v. Bentley Constr Co., 64 Ohio St.3d 642, 644,1992-Ohio-42, 597 N.E.2d 504. Therefore, an owner and occupier has no duty to remove natural accumulations of ice and snow from private walks and steps on the premises. Id., syllabus at three." Bailey v. St.Vincent DePaul Church (May 8, 1997), Cuyahoga App. No. 71629.
 {¶ 20} As noted in Bailey, there are two exceptions to the open and obvious doctrine. "If an occupier is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on his or her premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area, negligence may be proven. * * * A second exception to the no-duty rule exists where the owner is actively negligent in permitting or creating an unnatural accumulation of ice and snow." Id., citing Lopatkovich, supra.
 {¶ 21} In the case before us, neither of the two exceptions to the open and obvious doctrine apply. Nothing in the record demonstrates that the natural accumulation of snow and ice on the front steps created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions generally prevailing in the area. In addition, nothing in the evidence demonstrates that the church was actively negligent in permitting or creating an unnatural accumulation of ice and snow.
 {¶ 22} In Bailey, plaintiff slipped and fell on an icy walkway on defendant's property. Plaintiff alleged that the ice was not open and obvious because of particular conditions that the defendant knew about. According to plaintiff, ice falling from the church roof onto the walkway leading to the church entrance would thaw and then refreeze, creating a substantially more dangerous condition than she could reasonably anticipate.
 {¶ 23} On appeal, this court determined that "the freeze and thaw cycle accompanying the winter climate in northeastern Ohio" created a "natural accumulation of snow and ice." There was no evidence that defendant did anything to transform it into an unnatural accumulation.
 {¶ 24} Appellant argues in her first assignment of error that the trial court erred because significant issues of material fact remain. She argues that she was unaware of the hazard, and the danger was not obvious or apparent to her. We do not find any merit in this argument.
 {¶ 25} The law uses an objective, not subjective, standard when determining whether a danger is open and obvious. The fact that appellant herself was unaware of the hazard is not dispositive of the issue. It is the objective, reasonable person that must find that the danger is not obvious or apparent. As previously stated, there is no duty under Ohio law to remove natural accumulations of snow or ice.Sidle, supra. There is nothing in the record here to demonstrate that the accumulation on the front stairs of the church was anything other than a natural accumulation.
 {¶ 26} In Yanda v. Consolidated Management, Inc. (Aug. 16, 1990), Cuyahoga, App. No. 57268, this court upheld the lower court's verdict in favor of the landlord in a case arising from the tenant's slip and fall on a natural accumulation of snow and ice in the parking lot of the landlord's premises. This court explained that a landlord's liability under these circumstances will arise only when "the landlord had'superior knowledge of the particular danger which caused the injury." (Emphasis added.) Yanda at^f1, quoting LaCourse v. Fleitz (1986),28 Ohio St.3d 209, 210. In Yanda, we opted not to discourage the diligence of landlords to exercise ordinary care in undertaking to clear their properties of ice and snow in a reasonable manner.
 {¶ 27} Here, the church was only following its usual procedures when it provided lighting around the church entrances and spread salt around the steps and sidewalks. In addition, appellant was alerted to the fact that the parking lot entrance was available and accessible when she witnessed her daughter and several other people use that entrance to enter the church. Appellant neglected to use that entrance and instead walked around to the front of the church.
 {¶ 28} There were no awnings, porches or other structures attached to the church near the stairway leading to the main entrance that would have caused anything other than a natural accumulation of snow and/or ice to be present on the stairway. Also, iron hand railings were in place and firmly attached on each side of the stairway, and the stairway was well lit by lights affixed to the church building on each side of the entrance door, as well as by a nearby street light.
 {¶ 29} Appellant argues in her second assignment of error that the church had superior knowledge that an extra hazard would be encountered by anyone attempting to enter the building through the front door of the church. We find nothing in the record to show that appellant and the church had anything other than equal knowledge of the snow and ice hazard on the date of the incident.
 {¶ 30} Appellant also makes a great deal out of the fact that the front doors were locked;[4] however, she fails to provide any case law demonstrating that the locked doors were a hazardous condition under Ohio law.
 {¶ 31} In her fifth assignment of error, appellant argues that the lower court erred because it failed to recognize that there can be more than one proximate cause or direct cause of an injurious fall on accumulated ice and snow. Our review of the record demonstrates that this argument is also without merit.
 {¶ 32} Appellant was asked during her deposition, "What caused you to fall?" She responded that her fall at the church was caused by what she believes to be "ice on the stairs."[5] She failed to cite any other cause for her fall — ice on the stairs was what she believed to be the sole proximate cause of her fall, not the locked doors. Even if the doors to the main entrance had been unlocked, it is possible that appellant could have fallen while descending the stairway after the choir performance. Under that scenario, it makes no difference to the final outcome whether the doors were unlocked or not; appellant still could have fallen. Accordingly, it cannot be said that, but for the locked doors, appellant would not have fallen.
 {¶ 33} In addition, appellant's fall was not the natural and foreseeable result of the church's decision to lock its main entrance doors. It was not foreseeable that the locked doors would lead to appellant's fall and injuries, especially when deicing salt had been spread on the stairway, and there was an easily-accessible and highly-used alternative entrance at the side of the church. Appellant's argument fails the proximate cause test.
 {¶ 34} We find no merit in any of the above arguments. Accordingly, appellant's first, second and fifth assignments of error are overruled.
 {¶ 35} Because appellant's third and fourth assignments of error are substantially interrelated, we address them together.
 {¶ 36} "III. The trial court committed error by ignoring that under these particular circumstances the church had a duty to warn invitees of its decision to keep its front doors locked, and to inform invitees the side entrance should be used by those attending the choir performance that evening.
 {¶ 37} "IV. The trial court committed error by failing to recognize defendant had a duty to avoid aggravating the natural accumulation of snow and ice hazard on its front door steps, which was made worse by locked front doors without notice or warning, to invitees who were previously told the musical event would occur at that front door street address."
 {¶ 38} As previously stated, the church did not have a duty under Ohio law to warn its business invitees that its main doors would be locked because the locked doors themselves were not a hazardous condition. Moreover, the locked doors did not aggravate the open and obvious hazard posed by the natural accumulation of ice and/or snow on the church's premises.
 {¶ 39} To be entitled to recover for personal injuries allegedly sustained by a property owner's negligence, it is necessary for a plaintiff to show: 1) that a defendant, through its officers or employees, is responsible for the hazard complained of; or 2) that at least one of such persons have actual knowledge of the hazard and neglect to give adequate notice of its presence or remove it promptly; or 3) that such danger exists for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it is attributable to a want of ordinary care. Johnson v. WagnerProvision Co. (1943), 141 Ohio St. 584.
 {¶ 40} The record here does not demonstrate how the locked doors themselves were a hazard under the standards enunciated inJohnson, supra. There can be no duty on the part of a business premises owner, such as the church, to warn its invitees, such as appellant, of a hazardous condition that does not exist.
 {¶ 41} Appellant further argues that the locked main entrance doors "aggravated an existing ice and snow hazard" on the adjacent stairway and thereby placed her in harm's way. Appellant's testimony demonstrates that she had no problems using the stairway immediately prior to discovering that the front entrance doors were locked, and she wasnot in fear of using the stairway, either prior to or immediately after discovering that the doors were locked.[6]
 {¶ 42} Appellant's testimony clearly demonstrates that she did not consider the front stairway to be hazardous at the time of the incident. Accordingly, her third and fourth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., PRESIDING JUDGE
JAMES J. SWEENEY, J., and CHRISTINE T. MCMONAGLE, J., CONCUR
[1] Dep. Tr. C. Goode, pgs. 19-20.
[2] Dep. Tr. C. Goode, p. 34.
[3] Id., pgs. 40, 74.
[4] See discussion of Assignments of Error III and IV below.
[5] Dep. Tr. C. Goode, p. 40-41.
[6] Dep. Tr. C. Goode, pgs. 33-35, 37-39, 71-72.