[Cite as *McQuown v. Coventry Twp.*, 2017-Ohio-7151.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| TERRY MCQUOWN | | C.A. No.     28202 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| COVENTRY TOWNSHIP | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No.     CV 2015-04-2272 |

DECISION AND JOURNAL ENTRY

Dated: August 9, 2017

SCHAFER, Judge.

{¶1} Plaintiff-Appellant, Terry McQuown, appeals the judgment of the Summit County Court of Common Pleas granting Defendant-Appellee, Coventry Township's, motion for summary judgment and denying his motion for partial summary judgment as moot. For the reasons set forth in this opinion, we reverse and remand for further proceedings consistent with this opinion.

I.

{¶2} Mr. McQuown purchased a residential property located on North House Drive in Coventry Township, Ohio, in 1998. A surface water drainage/sewer pipe maintained and operated by Coventry Township runs parallel along the side of the road in the front of Mr. McQuown's property. This drainage pipe is not at issue in this appeal. However, the water from this drainage pipe empties into an uncovered ditch in the western portion of Mr. McQuown's

front yard. In this ditch exists the inlet to a separate underground drain pipe ("the drain pipe")[1] that runs perpendicular to the road and ditch and leads downhill to a retention pond located behind Mr. McQuown's property. This drain pipe was evidently installed to drain accumulating ditch water from the front of Mr. McQuown's property through the side of the yard and out the back of the property to the retention pond. The deed for Mr. McQuown's property expressly states that the property is subject to a seven and one half foot drainage easement on the west side of the lot, where the drain pipe is located. However, the deed does not state who has the benefit of the easement. On April 9, 2013, Mr. McQuown was clearing debris from the ditch in his front yard when he lost his balance and fell onto a sharp rusted metal rod positioned directly in front of the inlet of the underground drain pipe. Mr. McQuown impaled his right arm on the metal rod.

{¶3} Mr. McQuown and his wife, Patricia, initially filed a lawsuit against Coventry Township pleading causes of action for negligence and loss of consortium. However, the McQuowns voluntarily dismissed that complaint. Mr. McQuown thereafter refiled his complaint in the instant matter against Coventry Township, pleading one count of negligence. Mrs. McQuown is not a party to the present lawsuit. Coventry Township subsequently filed an answer denying the allegations set forth in Mr. McQuown's complaint and raised several affirmative defenses, including immunity and the applicability of the "open and obvious" doctrine. The matter then proceeded through the pretrial process.

{¶4} On October 30, 2015, Coventry Township filed a motion for summary judgment arguing that, as a political subdivision, it is entitled to immunity and that no exceptions to political subdivision immunity apply in this matter. Moreover, Coventry Township argued that it is entitled to summary judgment with respect to Mr. McQuown's negligence claim because any

---

[1] These two drain pipes are not connected.

danger associated with the metal rod was an open and obvious hazard. Mr. McQuown subsequently filed a brief in opposition to Coventry Township's summary judgment motion, to which Coventry Township filed a reply brief.

{¶5} Thereafter, Mr. McQuown filed a motion for partial summary judgment wherein he argues that the open and obvious doctrine is not applicable in this case. Mr. McQuown also argues in his motion for partial summary judgment that there is no genuine issue of material fact that Coventry Township operates a storm water sewer system and that the area of his property where he was injured was part of that system. Coventry Township filed a brief in opposition to Mr. McQuown's motion for partial summary judgment.

{¶6} The trial court held a hearing on the parties' respective motions for summary judgment. On March 18, 2016, the trial court granted Coventry Township's motion for summary judgment and denied Mr. McQuown's motion for partial summary judgment as moot. Specifically, the trial court concluded that Coventry Township is immune from liability under R.C. 2744.02 and, in the alternative, that the metal rod constituted an open and obvious hazard, thus obviating any duty of care that Coventry Township may have owed to Mr. McQuown.

{¶7} Mr. McQuown filed this timely appeal and raises three assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred in granting summary judgment in favor of Defendant Coventry Township on McQuown's negligence claim because a question of fact remains as to whether the drainage pipe located on McQuown's property, maintained and used by Defendant Coventry was part of a storm water sewer system constituting a proprietary function under Ohio R.C. § 2744.01(G) for which Coventry has no immunity under Ohio R.C. § 2744.02(B)(2).**

{¶8}    In his first assignment of error, Mr. McQuown argues that the trial court erred by granting Coventry Township's motion for summary judgment on the basis that it is entitled to political subdivision immunity.  We agree.

## A.  Standard of Review

{¶9}    We review a trial court's award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party.  Civ.R. 56(C).  Before making such a contrary finding, however, a court must view the evidence "most strongly in favor" of the non-moving party, *id*., and resolve all doubts in its favor, *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶10}   Summary judgment proceedings create a burden-shifting framework.  To prevail on a motion for summary judgment, the movant has the initial burden to identify the portions of the record demonstrating the lack of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law.  *Dresher v. Burt*, 75 Ohio St.3d 280, 283 (1996).  In satisfying this initial burden, the movant need not offer affirmative evidence, but it must identify those portions of the record that support her argument.  *Id*.  Once the movant overcomes the initial burden, the non-moving party is precluded from merely resting upon the allegations contained in the pleadings to establish a genuine issue of material fact.  Civ.R. 56(E).  Instead, it has the reciprocal burden of responding and setting forth specific facts that demonstrate the existence of a "genuine triable issue."  *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

## B. Political Subdivision Tort Liability

{¶11} "R.C. Chapter 2744, the Political Subdivision Tort Liability Act, absolved political subdivisions of tort liability, subject to certain exceptions." *Moore v. Streetsboro*, 11th Dist. Portage No. 2008-P-0017, 2009-Ohio-6511, ¶ 41, citing *Franks v. Lopez*, 69 Ohio St.3d 345, 347 (1994). "In order to determine whether a political subdivision is immune from liability, we engage in a three-tiered analysis." *Elton v. Sparkes*, 9th Dist. Summit No. 27684, 2016-Ohio-1067, ¶ 10, quoting *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 10. "The first tier sets forth the premise that, '[e]xcept as provided in division (B) of [R.C. 2744.02], a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.'" *Elton* at ¶ 10, quoting *Moss* at ¶ 10, quoting R.C. 2744.02(A)(1). Coventry Township qualifies as a political subdivision pursuant to R.C. 2744.01(F).

{¶12} In the second tier of the immunity analysis, "we determine whether one of the five exceptions to immunity outlined in R.C. 2744.02(B) applies to hold the political subdivision liable for damages." *Elton* at ¶ 10, quoting *Moss* at ¶ 10. An exception to immunity contained in R.C. 2744.02(B)(2) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Accordingly, "[p]ursuant to R.C. 2744.02(B)(2), a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property caused by an act or omission of the political subdivision or any of its employees in connection with the performance of a proprietary function." *Hill v. Urbana*, 79

Ohio St.3d 130 (1997), paragraph one of the syllabus. A proprietary function is defined, in relevant part, as a function that "promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1)(b). R.C. 2744.01(G)(2)(d) states that a "proprietary function" includes, but is not limited to, "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]" As the Second District Court of Appeals has noted "[t]here is no definition of 'sewer system' in the immunity statute." *Guenther v. Springfield Twp. Trustees*, 2d Dist. Clark No. 2010-CA-114, 2012-Ohio-203, ¶ 14. Accordingly, the term "sewer system" "should be construed more narrowly than broadly." *Id.*; *Anderson v. Warren Local School Dist. Bd. of Ed.*, 4th Dist. Washington No. 16CA21, 2017-Ohio-436, ¶ 54.

{¶13} With respect to the third tier of the immunity analysis, "immunity may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies." *Elton* at ¶ 10, quoting *Moss* at ¶ 10.

## C. Analysis

{¶14} In his complaint, Mr. McQuown asserted that his property "was subject to a seven and one half foot easement owned and/or utilized by" Coventry Township "for the operation and maintenance of a storm water sewer system designed to benefit the public." Mr. McQuown asserted in his complaint that on April 9, 2013, he fell and impaled his right arm on a metal rod that was positioned in front of the drain inlet to the storm water sewer system located on Coventry Township's easement on the west side of his property. Lastly, Mr. McQuown asserted that Coventry Township's operation and maintenance of the storm water sewer system constitutes a proprietary function under R.C. 2744.01(G) for which Coventry Township has no immunity pursuant to R.C. 2744.02(B)(2).

{¶15} In its motion for summary judgment, Coventry Township argues that it is entitled to immunity with respect to Mr. McQuown's negligence claim because: (1) the record is devoid of any evidence demonstrating that Coventry Township owns, operates, and maintains a "storm water sewer system;" (2) there is no grant or reservation of a drainage easement to or in favor of Coventry Township across Mr. McQuown's property; (3) there is no evidence that Coventry Township placed or left the metal rod on Mr. McQuown's property; and (4) Coventry Township did not have actual or constructive notice of a hazardous condition or potential danger (i.e. the metal rod) on Mr. McQuown's property.

{¶16} In support of its motion for summary judgment, Coventry Township cites to the affidavit of Attorney Thomas E. Parrish, the president of Johnson & Parrish Title Agency, Inc. Mr. Parrish attests that he reviewed an examination of the land title records in connection with Mr. McQuown's property on House Drive. Mr. Parrish attests that "[t]he search of the land title records [go] back to 1880. William A. Farriss was the allotor of the Farriss Hills Allotment[2] filed August 6, 1953. The recorded plat does not show a 7 1/2 foot drainage easement across the west side of the subject premises (Lot 34). It does show a reserved 15 foot wife 'drain ditch' affecting the east side of Lot 32 and the west side of Lot 33." (Emphasis sic.) Mr. Parrish also attests that he reviewed copies of all the deeds in the chain of title and that his examination "did not disclose any grant or reservation of a drainage easement across the subject property to or in favor of Coventry Township." Finally, Mr. Parrish avers that in his "expert opinion, to a reasonable degree of certainty, [Mr. McQuown's] property is not subject to any easement in favor of or owned by Coventry Township for storm water drainage purposes. There is no such easement found in the examination of the back chain of title to the property" and "[t]here is no

---

[2] The Farris Hills Allotment is the residential subdivision where Mr. McQuown's property is located.

recorded drainage easement ever granted to Coventry Township across, over or under the subject property."

{¶17} Coventry Township's motion for summary judgment also cites to the affidavit of Robert Lael Stouffer, the road superintendent of Coventry Township. In his affidavit, Mr. Stouffer attests that he has been a full-time employee of Coventry Township since 2000 and that he has personally inspected the area in the vicinity of Mr. McQuown's property. Mr. Stouffer attests that Coventry Township "does not own, operate or maintain a 'storm water sewer system'" and that no such "'storm water sewer system' [is] located adjacent to the McQuown property" on House Drive. As such, Mr. Stouffer avers that Coventry Township never performed any modifications and/or repairs to a storm water sewer system.

{¶18} Additionally, Mr. Stouffer attests in his affidavit that Coventry Township "did not install, own, maintain or otherwise have anything to do with the 'metal rod'" that injured Mr. McQuown, nor had he ever seen a metal rod similar to the one removed from the McQuown property anywhere else in Coventry Township. He further attests that Coventry Township did not place "a broken, rusted, metal rod approximately one inch in diameter in front of the drainage sewer [.]" Mr. Stouffer avers that at no time during his employment with Coventry Township did anyone ever advise him that a metal rod existed on Mr. McQuown's property. Mr. Stouffer further avers that Coventry Township had no actual or constructive notice of the rod's existence prior to April 9, 2013, when Mr. McQuown sustained his injuries. Indeed, on this point, Coventry Township cites to Mr. McQuown's own deposition testimony wherein he states that the metal rod had been on his property since he bought the house in 1998. Mr. McQuown testified that he knew that the metal rod was located on his property, but that he never notified Coventry Township about it. He further testified that he never asked Coventry Township to remove the

metal rod for him, nor did he ever attempt to remove the metal rod on his own, admitting that he had not "paid much attention to it."

{¶19} Mr. Stouffer further attests that he assisted Mr. McQuown following the April 9, 2013 incident by removing the metal rod and placing a plastic pipe cover over the outer edges of the exposed clay tile pipe. Mr. Stouffer avers that he did these things to accommodate Mr. McQuown, a Coventry Township resident, and not because he had any legal responsibility to do so. Lastly, Mr. Stouffer assets in his affidavit that "[i]n the late 1990's and early 2000's, Coventry Township ran a program for Coventry residents" to "install plastic pipes in roadside ditches and then fill and reseed the area," but that Coventry Township "did not acquire an easement over [Mr. McQuown's] property as part of the program." Mr. McQuown testified during his deposition that Coventry Township never performed any work on his property following the installation of the plastic pipe in 2000.

{¶20} Based on the foregoing evidence, we determine that Coventry Township satisfied its initial *Dresher* burden in demonstrating that no genuine issue of material fact remained to be litigated regarding whether its performance of a proprietary function caused Mr. McQuown's injuries.

{¶21} With Coventry Township having met its initial burden, the burden then shifted to Mr. McQuown as the non-moving party to provide specific facts which would demonstrate the existence of a "genuine triable issue" to be litigated at trial. *Tompkins*, 75 Ohio St.3d at 449. In his brief in opposition to Coventry Township's motion for summary judgment, Mr. McQuown argued that summary judgment is inappropriate because genuine issues of material fact remain with respect to: (1) whether Coventry Township operates a storm water sewer system; and (2)

whether "Coventry Township has an easement on [his] property that is an integral part of its storm water sewer system."

{¶22} In support of his brief in opposition to Coventry Township's motion for summary judgment, Mr. McQuown cites to the deposition testimony of Mr. Stouffer. Specifically, Mr. McQuown cites to the portion of Mr. Stouffer's testimony where he states that the metal rod that injured Mr. McQuown was located right on the property line between Mr. McQuown's private property and the public road right-of-way. Mr. Stouffer also testified that the metal rod was positioned close enough to the public right-of-way that he felt that he could remove it without having to worry about trespassing on private property. Additionally, Mr. McQuown cites to the deposition of George Beckham, the zoning inspector for Coventry Township. Specifically, upon examining a photograph of the drain inlet and metal rod, Mr. Beckham stated that it looked like the drain line required maintenance. Mr. Beckham further stated that "[i]f [the drain inlet] was in his yard, [he'd] do something with it."

{¶23} Mr. McQuown also cites to his own affidavit wherein he avers that he has witnessed employees of Coventry Township in the area of the drain pipe on his property "at least five times before the date [he] was injured on April 9, 2013." Specifically, Mr. McQuown attests that Coventry Township installed underground sewer pipe in front of his house in 2000 in order to drain storm water. Additionally, Mr. McQuown attests that:

> [a]pproximately one year before the date of [his] injury, [he] met with Lael Stouffer at the drainage easement area, and requested permission from the Township to put limestone gravel in the drainage basin by the drainage easement, similar to what was installed at [other locations] to eliminate the need for maintenance. Stouffer while standing in the ditch, forbid me from putting stone in the drain basin area and said it would * * * make matters worse by restricting water flow and would result in weeds growing up through the gravel. [sic.]

Mr. McQuown further avers that approximately one week after injuring himself on April 9, 2013, Coventry Township removed the metal rod and placed a plastic pipe cover over the outer edges of the exposed pipe in the ditch. Mr. McQuown avers that neither he nor his wife ever asked Coventry Township to remove the metal rod or place a plastic cover over the pipe. Moreover, Mr. McQuown avers in his affidavit that he has observed the existence of underground storm water sewer drains at 10 other locations throughout Coventry Township, including two other locations on North House Drive. Lastly, Mr. McQuown cites to the portion of Mr. Stouffer's deposition testimony where he states that Coventry Township's storm water drainage system ties in with drainage systems from county roads.

{¶24} Viewing the aforementioned evidence in a light most favorable to Mr. McQuown as the non-moving party, we determine that Mr. McQuown has satisfied his reciprocal burden of demonstrating triable issues of material fact. Given the record before us, we conclude that a genuine issue of material fact remains regarding whether the drain pipe in Mr. McQuown's property is part of a sewer system that is operated and maintained by Coventry Township. Moreover, a genuine issue of triable fact remains regarding whether the seven and one half foot drainage easement over the western portion of Mr. McQuown's property is in favor of Coventry Township. Lastly, a genuine issue of material fact exists concerning whether the metal rod that injured Mr. McQuown was located on Mr. McQuown's private property or on the public right-of-way. The resolution of these issues of material fact necessarily address whether or not Mr. McQuown's injuries were caused by Coventry Township's negligent performance of a proprietary function. As such, because several issues of material fact remain, we conclude that the trial court erred by granting Coventry Township's motion for summary judgment on the basis of immunity.

{¶25} Mr. McQuown's first assignment of error is sustained.

## Assignment of Error II

**The trial court erred in its failure to address and grant McQuown's motion for summary judgment in that there is no genuine issue of material fact that the open-and-obvious doctrine is not available to Coventry because Coventry failed to meet its requirements under Civ.R. 56 to provide evidence that it was the owner or occupier of the property at issue.**

## Assignment of Error III

**The trial court erred in granting summary judgment in favor of Defendant Coventry Township based on the open-and-obvious affirmative defense because Coventry failed to establish that it was the owner or occupier of the property at issue and based on the attendant circumstances, the hazard was not observable at the time McQuown was injured and the hazard was not what caused McQuown to fall.**

{¶26} In his second and third assignments of error, Mr. McQuown contends that the trial court erred by granting Coventry Township's motion for summary judgment on the basis that the metal rod constituted an open and obvious hazard. We agree.

{¶27} To obtain relief in a negligence action, the plaintiff "must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty." *Mondi v. Stan Hywet Hall & Gardens, Inc.*, 9th Dist. Summit No. 25059, 2010–Ohio–2740, ¶ 11. The legal duty owed to an injured party is dictated by the relationship between the owner of the premises and the injured party. *Hidalgo v. Costco Wholesale Corp.*, 9th Dist. Lorain No. 12CA010191, 2013-Ohio-847, ¶ 7. However, when "a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003–Ohio–2573, syllabus. As a result, the presence of an open and obvious danger "acts as a complete bar to any negligence claims." *Id.* at ¶ 5. The reasoning for such a complete bar "is that the open and obvious nature of the hazard itself serves as a warning [and the owner] may reasonably expect that persons entering the premises will discover [the hazard]

and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992).

{¶28} "Open and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection." *Zambo v. Tom–Car Foods*, 9th Dist. Lorain No. 09CA009619, 2010–Ohio–474, ¶ 8. To decide whether a hazard is open and obvious, we must resolve "'the determinative issue [of] whether the [hazardous] condition is observable.'" *Baker v. Bob Evans Farms, Inc.*, 9th Dist. Wayne No. 13CA0023, 2014–Ohio–2850, ¶ 11, quoting *Kirksey v. Summit Cty. Parking Deck*, 9th Dist. Summit No. 22755, 2005–Ohio–6742, ¶ 11. Our inquiry on this point is an objective one and the fact that a plaintiff was unaware of the hazard is not dispositive. *Goode v. Mt. Gillion Baptist Church*, 8th Dist. Cuyahoga No. 87876, 2006–Ohio–6936, ¶ 25. Additionally, to resolve this issue, we "must look to the totality of the circumstances, considering 'both the nature of the dangerous condition and any attendant circumstances that may have existed at the time of the injury.'" *Baker* at ¶ 11, quoting *Gehm v. Tri–Cty., Inc.*, 9th Dist. Lorain No. 09CA009693, 2010–Ohio–1080, ¶ 8; *see also Gardner v. Kinstlinger*, 9th Dist. Summit No. 26374, 2012–Ohio–5486, ¶ 11 (noting that "[t]he existence of attendant circumstances do not create an exception to the open and obvious doctrine" but are rather "considered as part of the totality of the circumstances in determining whether a genuine issue of material fact exists regarding whether a reasonable person would have discovered the hazard."). Although the courts have not developed a "precise definition of attendant circumstances," *Jenks v. Barberton*, 9th Dist. Summit No. 22300, 2005–Ohio–995, ¶ 16, the phrase encompasses "'all facts relating to a situation such as time, place, surroundings, and other conditions that would unreasonably increase the typical risk of a harmful result of an event.'"

*Marock v. Barberton Liedertafel*, 9th Dist. Summit No. 23111, 2006–Ohio–5423, ¶ 13, quoting *Hudspath v. The Cafaro Co.*, 11th Dist. Ashtabula No. 2004–A–0073, 2005–Ohio–6911, ¶ 19.

**{¶29}** As noted above, however, we determine that a genuine issue of material fact remains regarding whether the seven and one half foot drainage easement over the western portion of Mr. McQuown's property is in favor of Coventry Township. We also determined that a triable issue of material fact exists concerning whether the metal rod that injured Mr. McQuown was located on Mr. McQuown's private property or on the public right-of-way. These genuine issues of material fact pervade the issues involved in an analysis of the open and obvious doctrine, such as identifying the respective parties' relationship to the property where the metal rod was located and what legal duty, if any, Coventry Township owed to Mr. McQuown with respect to the metal rod. Accordingly, with such genuine issues of material fact remaining, we conclude that the trial court erred by granting summary judgment in favor of Coventry Township on the basis that the metal rod constituted an open and obvious hazard. *See Vonderhaar v. Cincinnati*, 1st Dist. Hamilton No. C-100146, 2010-Ohio-6289, ¶ 26-28 (declining to review whether an allegedly dangerous condition was open and obvious where genuine issues of material fact remained as to whether the city was an owner or occupier of the premises where the allegedly hazardous condition was located), citing *Simmers* at 645.

**{¶30}** Mr. McQuown's second and third assignments of error are sustained.

### III.

**{¶31}** Mr. McQuown's three assignments of error are sustained. Accordingly, the judgment of the Summit County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CONCURS.

HENSAL, P. J.
DISSENTING.

{¶32} The trial court correctly granted summary judgment to the Township. I, therefore, respectfully dissent.

{¶33} The open and obvious doctrine applies when a condition is "so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong*

*v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13.  If the plaintiff is actually aware of an unsafe condition on premises, however, the similar "known peril" doctrine applies.  *Raflo v. Losantiville Country Club*, 34 Ohio St.2d 1, 4 (1973) (identifying doctrine).  According to the Ohio Supreme Court, "where there is danger, and the peril is known, whoever encounters it, voluntarily and unnecessarily, can not be regarded as exercising ordinary prudence, and therefore does so at his own risk."  *Schaefler v. City of Sandusky*, 33 Ohio St. 246, 249 (1877); *see also Grossnickle v. Village of Germantown*, 3 Ohio St.2d 96, 103 (1965) ("[O]ne who assumes, voluntarily, a known hazard, must accept the consequences even though he may have exercised the utmost care.").

{¶34}  Mr. McQuown admitted that the metal rod has been on his property since 1998.  The fact that he may have forgotten about its existence or that it was covered by leaves on the day of his fall does not prevent the application of the known peril doctrine.  *Raflo* at 3 ("[T]he plaintiff's failure to avoid a known peril is not excused by the fact that he 'did not think,' or 'forgot.'").  Accordingly, this Court should overrule Mr. McQuown's second and third assignments of error on their merits, it should overrule his first assignment of error as moot, and it should affirm the judgment of the trial court.

APPEARANCES:

JEROME T. LINNEN, JR., Attorney at Law, for Appellant.

IRVING B. SUGERMAN and MATTHEW GRASHOFF, Attorneys at Law, for Appellee.