OPINION
{¶ 1} Plaintiffs-appellants, June and Robert Souther, appeal a decision of the Preble County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Preble County District Library/West Elkton Branch, Preble County District Library, Barbara Collins, Debra Brock, Phyllis White, Jill Vaniman, James Corson, Alice Lindley and Carolyn Urich ("Preble County Library Group"). Appellants also appeal the court's granting of summary judgment to defendants-appellees, the Village of West Elkton, Ohio; Charles Pennington, Mayor of West Elkton; and Fred Specht, Brett Lewis, Corwin Talbert, Ernie Chasteen, Patrick Osterberger and Matt Bair, Councilpersons of the Village of West Elkton ("West Elkton Group").[1] We affirm.
 {¶ 2} The Preble County Library District ("the District") was authorized and established pursuant to Chapter 3375 of the Ohio Revised Code as a free public library. The District's several branches, all situated in Preble County, are controlled and managed by a single seven-member board of trustees. The building housing the West Elkton branch of the library has been leased by the District since approximately 1986 and was constructed prior to the library's occupancy. The District remodeled the interior of the structure in 2001, including painting and re-carpeting. The interior includes a single step approximately eight inches in height and eleven feet in length. The carpeting on the step is the same color as that on the upper and lower floors. The step is not designated by any signage, reflective tape, or distinctive illumination. According to the affidavits of two library employees, there had been no accidents or occurrences associated with the step prior to the incident in question.
 {¶ 3} On May 20, 2002, 83-year-old Dwight Souther ("decedent") visited the West Elkton branch of the library with his grandchildren. Decedent ascended the step with the help of two people. A few minutes later he fell off the step, injuring his left hip. Decedent underwent hip replacement surgery the next day. He died approximately six months after the accident, following infection and additional surgery.
 {¶ 4} On May 19, 2003, appellants filed suit as representatives of decedent's estate, alleging negligence. Appellees filed their respective motions for summary judgment. On March 23, 2005, the trial court granted the motions and dismissed the action. Appellants timely filed a notice of appeal, raising four assignments of error.
 {¶ 5} Each of appellants' assignments of error directly or indirectly attacks the trial court's grant of summary judgment. Accordingly, we must first consider our standard review. We review a trial court's decision on a summary judgment motion de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper where (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Civ.R. 56(C). See, also, Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Civ.R. 56(C). See, also, Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Civ.R. 56(E). See, also,Dresher at 293.
 {¶ 6} In order to survive summary judgment after appellees demonstrated that there were no genuine issues for trial, appellants needed to show that the evidence, when viewed in their favor, established as a matter of law that there were genuine issues of material fact concerning one or more of the necessary elements of negligence. In order to establish a claim in negligence, appellants must have shown that appellees owed decedent a legal duty of care, that this duty was breached, and that this breach proximately caused decedent's injury. Wallacev. Ohio Dept. of Commerce, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶22. Appellants' failure to prove any element is fatal to their negligence claim. Whiting v. Ohio Dept. of Mental Health
(2001), 141 Ohio App.3d 198, 202.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED WHEN IT RULED THAT THE PLAINTIFF [SIC] WAS A LICENSEE AND THAT DEFENDANTS WERE ENTITLED TO IMMUNITY UNDER ORC SECTION 2744.029(A)(1) AND THAT THE INDIVIDUAL MEMBERS OF THE BOARD WERE IMMUNE FROM LIABILITY UNDER SECTION 2744.03(A)(6)."
 {¶ 9} Appellants urge this court to find that appellees are not shielded from liability by sovereign immunity because appellees breached a duty of ordinary care owed to decedent as a business invitee. Alternatively, appellants assert that immunity is abrogated by the imposition of express statutory liability on appellees.
 {¶ 10} Ohio Revised Code Chapter 2744 establishes a three-tiered analysis for determining whether a political subdivision is immune from tort liability. Grooms v. Crawford,
Brown App. Nos. CA2005-05-008, CA2005-05-009, 2005-Ohio-7028, ¶ 11. First, R.C. 2744.02(A)(1) provides that a political subdivision is generally immune from liability for acts or omissions connected with governmental or proprietary functions. Second, this immunity is abrogated if one of the exceptions in R.C. 2744.02(B) applies. Third, if a political subdivision is exposed to liability by virtue of one of these exceptions, then R.C. 2744.03(A) provides defenses that the political subdivision may assert.
 {¶ 11} In the case at bar, the trial court determined that sovereign immunity was available to appellees because the District and its board of trustees, as well as the Village of West Elkton, were included in the term "political subdivision." See R.C. 2744.01(F). Of the five R.C. 2744.02(B) immunity exceptions, the trial court found that only three were arguable considering the facts and circumstances of this case.
 {¶ 12} One exception, R.C. 2744.02(B)(2), imposes liability upon political subdivisions for the negligent acts of their employees when such employees are performing proprietary functions. However, this section is not applicable to the present matter in view of the fact that R.C. 2744.01(C)(2)(d) indicates that the provision of a free library system constitutes a "governmental function."
 {¶ 13} A second exception, R.C. 2744.02(B)(4), provides that a political subdivision will be liable for the negligent performance of governmental functions by employees which occurs as a result of physical defects within or on the grounds of the buildings used to carry out those functions. To determine whether appellees were negligent, we must first decipher the requisite duty of care owed to decedent under the circumstances.
 {¶ 14} In cases of premises liability, the scope of the duty owed to a visitor depends upon his status. Shump v. FirstContinental-Robinwood Assoc., 71 Ohio St.3d 414, 417, 1994-Ohio-427. An invitee is one who enters property by invitation and for the benefit of the property owner or occupier.Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68. An owner or occupier of property is obliged to exercise ordinary care in ensuring the safety of invitees. Id. By contrast, a licensee is one who enters property with the permission or acquiescence of the owner or occupier and for the benefit of the individual instead of the owner or occupier. Id. The duty of care owed to a licensee is a duty to avoid wanton, reckless, or willful conduct in disregard of the safety of such individuals. Id.
 {¶ 15} A review of the record compels the conclusion that decedent was a licensee. As the trial court noted, "[v]isitors on state or local government property are generally classified as licensees." See, e.g., Provencher v. Ohio Dept. of Transp.
(1990), 49 Ohio St.3d 265, syllabus; Hood v. Bethel-Tate SchoolDist. (Oct. 24, 1994), Clermont App. No. CA94-05-036, 4-5;Light at 68. Since a public library is open to all visitors, it follows that decedent entered the property with the permission of the occupier. Appellants argue that decedent was nonetheless an invitee because the library benefited from his presence. Appellants define this benefit by speculating that the reason for the library's existence would cease without patrons such as decedent utilizing the library and fulfilling its purpose.
 {¶ 16} Although appellants argue that decedent was a "business invitee," their proffered line of reasoning in support of this contention echoes the "public invitee" standard. As set forth in the Restatement of the Law 2d, Torts (1965), Section 332(2), "[a] public invitee is a person who is invited to enter and remain on land as a member of the public for a purpose for which the land is held open to the public." The Ohio Supreme Court rejected this standard most recently in Provencher v. OhioDept. of Transp. (1990), 49 Ohio St.3d 265, noting that "[t]he economic (or tangible) benefit test has long been recognized in this court in order to distinguish the status of an invitee from that of a licensee." Id. at 266. In analyzing the claimant's status while using a public roadside rest stop, the Provencher
court declined to focus on the purpose of the rest stop and instead chose to examine the benefit received by its patrons. Id. at 266-68.
 {¶ 17} Employing the proper standard in the present matter, the appropriate focus is not the purpose of the library but the benefits received in its use. Patrons primarily visit the library to take advantage of its free resources. Thus, the benefit retained is personal to these patrons and does not accrue to the library itself. By appellants' own admission, decedent entered the library in order for his grandchildren to use its computers. The library did not benefit from the children's use of the computers; decedent and his grandchildren received the sole benefit. Decedent was therefore a licensee.
 {¶ 18} As a licensee, appellees owed decedent a duty to refrain from wanton, reckless, or willful conduct. Appellants fail to allege that appellees acted in a wanton, reckless, or willful manner. In the absence of such conduct, there can be no breach of the duty owed to decedent by appellees. Without a breach of duty, appellants' negligence claim fails. Because appellants failed to establish a negligent performance of government functions resulting from defects in the library building, R.C. 2744.02(B)(4) is inapplicable.
 {¶ 19} A third immunity exception, R.C. 2744.02(B)(5), imposes liability upon a political subdivision for the negligent acts of its employees when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code. To support the applicability of this exception, appellants offer a number of authorities, including the Americans with Disabilities Act of 1990 ("ADA"),[2] R.C. 3781.11, Ohio Adm. Code 4101:1-11-0 (the Ohio Basic Building Code, or "OBBC"), and Ohio Adm. Code 4101:2-8-16 (the Ohio Mechanical Code, or "OMC"). Nearly all of these authorities are irrelevant in view of the fact that this statutory exception to sovereign immunity explicitly mandates that civil liability be imposed by a section of the Revised Code. See R.C. 2744.02(B)(5). As such, the ADA, OBBC, and OMC cannot be invoked to support the applicability of the R.C. 2744.02(B)(5) immunity exception. The only arguably pertinent authority provided by appellants is R.C. 3781.11, which provides in relevant part:
 {¶ 20} "Any building, structure, or part thereof, constructed, erected, altered, manufactured, or repaired not in accordance with the statutes of this state or with the rules of the board, and any building, structure, or part thereof in which there is installed, altered, or repaired any fixture, device, and material, or plumbing, heating, or ventilating system, or electric wiring not in accordance with such statutes or rules is a public nuisance." R.C. 3781.11(C).
 {¶ 21} Appellants maintain that the failure of appellees to install a ramp and handrails at the time the building was converted into a library in compliance with building code regulations violates R.C. 3781.11. While this section of the Revised Code may impose a duty to comply with Ohio laws requiring that a building be made handicapped-accessible, it does not expressly impose civil liability for the failure to comply therewith. Cf. Day v. Middletown-Monroe City School Dist. (July 17, 2000), Butler App. No. CA99-111-86, at 10. Consequently, R.C.3781.11 does not trigger the R.C. 2744.02(B)(5) immunity exception.
 {¶ 22} Although appellants identify the issue of whether the individual members of the law library board of trustees were immune from liability under section 2744.03(A)(6) in the text of their first assignment of error, they entirely omit discussion of this issue in their brief. We therefore decline to consider it. We note, however, that the facts of the case do not indicate a genuine issue regarding the immunity of the board members under this section of the Revised Code.[3]
 {¶ 23} Because appellants have failed to establish that there were any genuine issues regarding the applicability of sovereign immunity to appellees, their first assignment of error is overruled.
 {¶ 24} Assignment of Error No. 2:
 {¶ 25} "THE COURT ERRED IN GRANTING DEFENDANT-APPELLANTS [SIC] SUMMARY JUDGMENT BY IGNORING THE FACT THAT THE DEFENDANTA-PPELLANTS [SIC] HAD A DUTY TO MAKE THE WEST ELKTON LIBRARY HANDICAP ACCESSIBLE WHEN THEY CONVERTED THE BUILDING TO A LIBRARY."
 {¶ 26} Assignment of Error No. 3:
 {¶ 27} "THE COURT ERRED IN RULING THAT THE DEFENDANT-APPELLEES DID NOT HAVE TO COMPLY WITH OHIO BASIC BUILDING CODE AND/OR PREBLE COUNTY BUILDING REGULATIONS."
 {¶ 28} Although neither explicit nor clear, appellants appear to assert liability on the basis that appellees were negligent per se. Spanning the first three assignments of error, appellants offer a number of authorities upon which to premise per se liability. Appellants assert that the failure to make the building handicapped-accessible when converted into a library violates the ADA. As previously mentioned, appellants argue that appellees were negligent due to the fact that the library was not in compliance with administrative regulations. Specifically, appellants allege that appellees failed to obtain the requisite Certificate of Occupancy pursuant to Ohio Adm. Code 4101:1-1-10
and failed to install handrails on the walls adjoining the step inside the library in violation of Ohio Adm. Code 4101:2-8-16.
 {¶ 29} In Chambers v. St. Mary's School, 82 Ohio St.3d 563,1998-Ohio-184, reconsideration denied 83 Ohio St.3d 1453, the Ohio Supreme Court held that the violation of an administrative rule does not constitute negligence per se; rather, such a violation may be admissible as evidence of negligence. Id. at 568. The issue before the court in Chambers dealt with administrative regulations adopted as part of the Ohio Basic Building Code. The court reasoned that extending per se negligence liability to violations of administrative rules was not justified in view of the differences in process and accountability between administrative regulation and legislative rulemaking. Id. at 566-67. As a result of the high court's holding, we find that appellants' insistence that appellees are per se negligent as a result of alleged building code violations is without merit. See, generally, Olivier v. Leaf Vine (Apr. 15, 2005), Miami App. No. 2004 CA 35, 2005-Ohio-1910.
 {¶ 30} The ADA also cannot be cited to impose per se liability. Title II of the ADA provides that qualified individuals shall not be "excluded from participation in or 
denied the benefits of the services, programs, or activities of a public entity[.]" Section 12132, Title 42, U.S. Code. Appellants did not present any evidence that decedent was a "qualified individual with a disability" for ADA purposes. See Section 12131(2), Title 42, U.S. Code.[4] In the absence of such proof, decedent cannot invoke the protections of the ADA. Lovellv. Chandler (C.A.9, 2002), 303 F.3d 1039, 1052 ("To establish a violation of Title II of the ADA, a plaintiff must show that [1] he is a qualified individual with a disability; [2] he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and [3] such exclusion or discrimination was by reason of his disability"). Appellants thus cannot premise liability on a violation of the ADA.
 {¶ 31} We additionally note that appellants' reliance on Ohio Adm. Code 4101:2-8-16 is misplaced, as this chapter, which pertains to the installation of ramps as a means of egress, has been repealed.
 {¶ 32} Appellants' second and third assignments of error are overruled.
 {¶ 33} Assignment of Error No. 4:
 {¶ 34} "THE COURT ERRED IN APPLYING THE `OPEN AND OBVIOUS' LEGAL THEORY TO THIS CASE."
 {¶ 35} Appellants insist that excusing appellees' duty to warn decedent of the existence of the step by invocation of the open and obvious doctrine conflicts with appellees' duty to comply with building code regulations.
 {¶ 36} The open and obvious doctrine concerns the first prong of a negligence claim — the existence of a duty. Where the danger is open and obvious, a property owner owes no duty of care to individuals lawfully on the premises. Armstrong v. Best Buy Co.,Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 14. Open and obvious hazards are not concealed and are discoverable by ordinary inspection. Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49,50-51. The dangerous condition at issue does not actually have to be observed by the claimant to be an open and obvious condition under the law. Lydic v. Lowe's Cos., Inc., Franklin App. No. 01AP-1432, 2002-Ohio-5001, ¶ 10. Rather, the determinative issue is whether the condition is observable. Id.
 {¶ 37} The Chambers court, in holding that the violation of an administrative regulation does not constitute negligence per se, did not address the applicability of the open and obvious doctrine under such circumstances. Chambers, 82 Ohio St.3d 563. Ohio courts of appeal that have directly addressed the issue have reached different conclusions regarding whether an alleged violation of administrative rules prohibits application of the open and obvious doctrine and precludes summary judgment on a negligence claim. Some refuse to apply the open and obvious doctrine in the face of a purported agency rule violation, reasoning that such a violation raises a genuine issue of material fact regarding the property owner's duty and breach thereof. See, e.g., Francis v. Showcase Cinema Eastgate,
Hamilton App. No. C-030268, 2003-Ohio-6507; Uddin v. EmbassySuites Hotel, Franklin App. No. 04AP-754, 2005-Ohio-6613. Other courts hold that an alleged administrative rule violation does not prohibit application of the open and obvious doctrine. These courts reason that, although such a violation may serve as evidence of negligence, this evidence should be considered in conjunction with surrounding circumstances, including whether the condition was open and obvious. See, e.g., Olivier,2005-Ohio-1910; Ryan v. Guan, Licking App. No. 2003CA00110,2004-Ohio-4032.
 {¶ 38} We find that the open and obvious nature of a condition is one of many facts to be considered on summary judgment in a negligence claim. In the case at bar, the step in the library was neither hidden nor concealed. Rather, it was observable and discoverable by an ordinary inspection. The step was an open and obvious hazard which decedent did in fact observe upon traversing it minutes prior to the accident. See Raflo v.Losantiville Country Club (1973), 34 Ohio St.2d 1; Leighton v.Hower Corp. (1948), 149 Ohio St. 72. Prior usage alone may not be conclusive as to knowledge of a hazard, but decedent's knowledge of the step can be inferred from the fact that he ascended the step with the aid of two people just minutes prior to the accident. Cf. Olivier at ¶ 40. Irrespective of whether decedent perceived the step, the step was in fact observable.Lydic, 2002-Ohio-5001 at ¶ 10. The open and obvious nature of the step alleviated appellees' duty to warn visitors of its existence, precluding liability for negligence. See Armstrong,2003-Ohio-2573 at ¶ 14.
 {¶ 39} Assuming, arguendo, that the open and obvious doctrine should not be applied to this particular case and that the step did not comply with building code regulations, appellants still cannot survive summary judgment on their negligence claim. As previously mentioned, the requisite duty owed to decedent as a licensee was the duty to avoid wanton, reckless, or willful conduct. As also mentioned, appellants failed to allege that appellees engaged in such conduct. Consequently, even if the open and obvious doctrine is not applied to relieve appellees' duty of care to decedent, appellants failed to show that appellees breached the applicable duty. Without a breach, the negligence claim fails.
 {¶ 40} Appellants' fourth assignment of error is overruled.
 {¶ 41} In view of the preceding facts, we conclude that appellants failed to satisfy their reciprocal evidentiary burden after appellees demonstrated that there were no genuine issues for trial. Accordingly, the trial court properly granted summary judgment in favor of appellees.
 {¶ 42} Judgment affirmed.
Walsh and Bressler, JJ., concur.
[1] Because the respective summary judgment motions of the Preble County Library Group and the West Elkton Group involve similar issues and the same set of facts, discussion of the propriety of the trial court's granting of the motions will be combined. We will refer to both groups of defendants-appellees collectively as "appellees."
[2] Section 12101 et seq., Title 42, U.S. Code.
[3] Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability unless one of the following applies: "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code."
[4] The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Section 12131(2), Title 42, U.S. Code.