[Cite as *Jackson v. Pike Cty. Bd. of Commrs.*, 2010-Ohio-4875.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| KAREN JACKSON, | : | |
| Plaintiff-Appellee, | : | Case No. 10CA805 |
| vs. | : | |
| BOARD OF PIKE COUNTY COMMISSIONERS, PIKE | : | DECISION AND JUDGMENT ENTRY COUNTY, OHIO, |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT:     Randall L. Lambert, 215 South Fourth Street, P.O.
                          Box 725, Ironton, Ohio 45638

COUNSEL FOR APPELLEE:     James H. Banks, P.O. Box 40, Dublin, Ohio 43017

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 9-28-10

ABELE, J.

{¶ 1}   This is an appeal from a Pike County Common Pleas Court judgment that

denied the Board of Pike County Commissioners, defendant below and appellant

herein, the benefit of an alleged immunity under R.C. Chapter 2744.

{¶ 2}   Appellant raises the following assignment of error for review:

> "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT
> THE APPELLANTS' MOTION FOR SUMMARY JUDGMENT

BECAUSE THEY ARE ENTITLED TO STATUTORY
IMMUNITY ACCORDING TO R.C. 2744.02."[1]

{¶ 3}   On August 9, 2007, appellee filed a complaint against appellant. Appellee alleged that she slipped and fell while on appellant's property and sustained injuries because appellant negligently and intentionally maintained the property so as to cause appellee's damages.   Appellee further asserted that appellant's conduct was willful, wanton, and reckless.

{¶ 4}   Appellant subsequently filed a summary judgment motion and argued that it is statutorily immune from appellee's claims under R.C. Chapter 2744.   Appellee filed a memorandum contra and attached her affidavit in which she averred that on the date of the incident, she "slipped on an uneven area which appeared to be part of the sidewalk on which [she] was standing."   Appellee explained:   "At first [she] believed that [she] had stepped into a hole on the sidewalk; however, when [she] was able to take a good look at the area, [she] saw that [she] had slipped into a hole where there is an unexpected uneven dip of the sidewalk on [appellant's] property."   Appellee stated that while she waited for help after her fall, a lady from the commissioner's office assisted her and stated "that the area should have been fixed a long time ago because it has made many people fall."   Appellee claimed that at the time of her fall, the uneven pavement was not open and obvious.

{¶ 5}   Photographs attached to appellee's affidavit depict the sidewalk area and show a slowly-inclining wheelchair ramp that abuts part of the sidewalk.   At the top of

---

[1] We note that although appellant refers to itself in the plural, there is only one party named as a defendant in the complaint.

the ramp, the pavement is level with the sidewalk.   At the bottom, the ramp is level with the parking lot.   A videotape that accompanied appellee's deposition more vividly depicts the area.   As one exits the building and turns left, one will encounter a sidewalk with a wheelchair ramp attached.   At the point where the sidewalk splits from the entrance area is a curbed corner.   Within a few footsteps thereafter (the parties did not present any testimonial evidence regarding measurements), the part of the handicap ramp that is even with the pavement begins its ascending slope to sidewalk level.   This creates what appellee refers to as a "hole."   This "hole" exists due to the sidewalk-handicap ramp configuration.   It is not, however, a literal "hole" in the sidewalk.   Instead, it is the point in the parking lot in between the sidewalk curb and the start of the handicap ramp.   Appellee alleges that she slipped along the edge of the sidewalk that rests next to the wheelchair ramp.

{¶ 6}   At her deposition, appellee stated that the area where she fell was shadowed and inhibited her ability to see the drop off.   She described the circumstances of her injury as follows: "As I was exiting the building, I came out to go towards my car, which was parked on the side–on the parking side.   I saw a young lady–a mother with her son.   And as I was stepping aside to go to my car, I slipped in that hole, as you see–that part, as you see, and my right ankle gave away, twisted * * * and it made me fall flat on my face."   Appellee admitted, however, that she did not look down while she walked.   She stated that she "had no clue that was a dip like that."   Appellee claimed that after she fell, Carolyn Remy, the commissioners' secretary, "came running out and said, 'Oh, my God.   I done told them to fix that.'" Remy indicated to appellee that there had "been several problems with that" and told

appellee, "'Don't worry.   We have insurance.'" Remy also told appellee, "'The commissioners' [sic] will take care of you.'"

**{¶ 7}**   On February 23, 2010, the trial court denied appellant's summary judgment motion.   The court determined that appellant failed to demonstrate the absence of a material fact as to whether the sidewalk condition constituted an open and obvious condition or whether it constituted a physical defect.   The court further determined that under R.C. 2744.05(A),[2] appellee could not maintain a claim for punitive damages.   This appeal followed.

**{¶ 8}**   In its sole assignment of error, appellant asserts that the trial court wrongly determined the statutory immunity issue.   Appellant contends that: (1) appellee cannot demonstrate that negligence occurred; and (2) appellee cannot demonstrate that a physical defect caused her injuries.   Specifically, appellant asserts that because the danger associated with the sidewalk and ramp was open and obvious, its employees could not have breached any duty to appellee.   Appellant further contends that appellee has set forth no evidence that any of its employees breached any duty owed to appellee.   Appellee counters that appellant is liable not only under R.C. 2744.02(B)(4), but also under sections (B)(2) and (B)(5).

A

---

[2] R.C. 2744.05(A) states:

> Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function:
> (A) Punitive or exemplary damages shall not be awarded.

## SUMMARY JUDGMENT STANDARD

**{¶ 9}** Initially, we note that appellate courts conduct a de novo review of trial court summary judgment decisions. See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. Thus, to determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law.

**{¶ 10}** Civ. R. 56(C) provides, in relevant part, as follows:

* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶ 11}** Thus, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is

adverse to the party against whom the motion for summary judgment is made.   See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.

B

GENERAL IMMUNITY PRINCIPLES

{¶ 12} R.C. Chapter 2744 establishes a three-step analysis for determining whether a political subdivision is immune from liability.   See, e.g., Cramer v. Auglaize Acres, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, at ¶14.   First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. See, e.g., Cramer; Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶7; Harp v. Cleveland Hts. (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020.   Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1).   See, e.g., Cramer; Ryll v. Columbus Fireworks Display Co., 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, at ¶25.   Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability.   See Cramer; Colbert at ¶9.   These defenses then re-instate immunity.   Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law.   See, e.g., Conley v. Shearer (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862; Murray v. Chillicothe, Ross App. No. 05CA2819, 2005-Ohio-5864, at ¶11.

C

R.C. 2744.02(B)(4)

{¶ 13} Appellant first contends that if any of the immunity exceptions apply, R.C. 2744.02(B)(4) contains the only possible exception. R.C. 2744.02(B)(4) states:

> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
> * * * *
> (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

Appellant argues that R.C. 2744.02(B)(4) does not remove its general grant of immunity because: (1) appellee cannot demonstrate that any of appellant's employees were negligent; and (2) appellee cannot establish that a physical defect within or on the grounds of the governmental building caused her injuries. We first consider appellant's assertion that none of its employees were negligent.

{¶ 14} A successful negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See, e.g., Texler v. D.O. Summers Cleaners (1998), 81 Ohio St.3d 677, 680,

693 N.E.2d 217; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614;

Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 472 N.E.2d 707.   If a

defendant points to evidence to illustrate that the plaintiff will be unable to prove any

one of the foregoing elements, and if the plaintiff fails to respond as Civ.R. 56 provides,

the defendant is entitled to judgment as a matter of law.   See Lang v. Holly Hill Motel,

Inc., Jackson 06CA18, 2007-Ohio-3898, at ¶19, affirmed, 122 Ohio St.3d 120,

2009-Ohio-2495, 909 N.E.2d 120.

{¶ 15} The existence of a defendant's duty is a threshold question in a

negligence case.   See Armstrong at ¶13.   In a premises liability case, the relationship

between the owner or occupier of the premises and the injured party determines the

duty owed.   See, e.g., Gladon v. Greater Cleveland Regional Transit Auth. (1996), 75

Ohio St.3d 312, 315, 662 N.E.2d 287; Shump v. First Continental-Robinwood Assocs.

(1994), 71 Ohio St.3d 414, 417, 644 N.E.2d 291.   In the case at bar, the parties do not

dispute that appellee was a business invitee.

{¶ 16} A premises owner or occupier possesses the duty to exercise ordinary

care to maintain its premises in a reasonably safe condition, such that business invitees

will not unreasonably or unnecessarily be exposed to danger.   Paschal v. Rite Aid

Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 203, 480 N.E.2d 474.   A premises owner or

occupier is not, however, an insurer of its invitees' safety.   See id.   While the premises

owner must warn its invitees of latent or concealed dangers if the owner knows or has

reason to know of the hidden dangers, see Jackson v. Kings Island (1979), 58 Ohio

St.2d 357, 358, 390 N.E.2d 810, invitees are expected to take reasonable precautions

to avoid dangers that are patent or obvious.   See Brinkman v. Ross (1993), 68 Ohio

St.3d 82, 84, 623 N.E.2d 1175; Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 233

N.E.2d 589, paragraph one of the syllabus.

{¶ 17} Therefore, when a danger is open and obvious, a premises owner owes

no duty of care to individuals lawfully on the premises.   See Armstrong at ¶5; Sidle,

paragraph one of the syllabus.   By focusing on duty, "the rule properly considers the

nature of the dangerous condition itself, as opposed to the nature of the plaintiff's

conduct in encountering it."   Armstrong at ¶13.   The underlying rationale is that "the

open and obvious nature of the hazard itself serves as a warning.   Thus, the owner or

occupier may reasonably expect that persons entering the premises will discover those

dangers and take appropriate measures to protect themselves."   Id. at ¶5.   "The fact

that a plaintiff was unreasonable in choosing to encounter the danger is not what

relieves the property owner of liability.   Rather, it is the fact that the condition itself is so

obvious that it absolves the property owner from taking any further action to protect the

plaintiff."   Id. at ¶3.   Thus, the open and obvious doctrine obviates the duty to warn

and acts as a complete bar to recovery. Id. at ¶5.

{¶ 18} We further note that the landowner's duty is not to be determined by

questioning "whether the [condition] could have been made perfect or foolproof.   The

issue is whether the conditions that did exist were open and obvious to any person

exercising reasonable care and watching where she was going."   Orens v. Ricardo's

Restaurant (Nov. 14, 1996), Cuyahoga App. No. 70403, citing Centers v. Leisure

Internatl., Inc. (1995), 105 Ohio App.3d 582, 584, 664 N.E.2d 969.

{¶ 19} As stated in 2 Harper & James, Law of Torts (1974) 1489-1491, Section

27.13:

"People can hurt themselves on almost any condition of the premises.   That is certainly true of an ordinary flight of stairs.   But it takes more than this to make a condition unreasonably dangerous.   If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight.   This is true of the flight of ordinary stairs in a usual place in the daylight.   It is also true of ordinary curbing along a sidewalk, doors or windows in a house, counters in a store, stones and slopes in a New England field, and countless other things which are common in our everyday experience.   It may also be true of less common and obvious conditions which lurk in a place where visitors would expect to find such dangers.   The ordinary person can use or encounter all of these things safely if he is fully aware of their presence at the time.   And if they have no unusual features and are in a place where he would naturally look for them, he may be expected to take care of himself if they are plainly visible.   In such cases it is enough if the condition is obvious, or is made obvious (e.g., by illumination).   The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge.   Hence the obvious character of the condition is incompatible with negligence in maintaining it.   If plaintiff happens to be hurt by the condition, he is barred from recovery by lack of defendant's negligence towards him, no matter how careful plaintiff himself may have been. * * * "

(footnotes omitted), quoted in Baldauf v. Kent State Univ. (1988), 49 Ohio App.3d 46, 49, 550 N.E.2d 517, 520-21.

{¶ 20} In most situations, whether a danger is open and obvious presents a question of law.   See Lang, supra, at ¶23; Hallowell v. Athens, Athens App. No. 03CA29, 2004-Ohio-4257, at ¶21; see, also, Nageotte v. Cafaro Co., Erie App. No. E-04-15, 2005-Ohio-2098.   Under certain circumstances, however, disputed facts may exist regarding the openness and obviousness of a danger, thus rendering it a question of fact.   As the court explained in Klauss v. Marc Glassman, Inc., Cuyahoga App. No. 84799, 2005-Ohio-1306, at ¶¶17-18:

"Although the Supreme Court of Ohio has held that whether a duty exists is a question of law for the court to decide, the issue of whether a

> hazardous condition is open and obvious may present a genuine issue of fact for a jury to review.
>
> Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law.   Anderson v. Hedstrom Corp. (S.D.N.Y.1999), 76 F.Supp.2d 422, 441; Vella v. Hyatt Corp. (S.D. MI 2001), 166 F.Supp.2d 1193, 1198; see, also, Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49, 566 N.E.2d 698.
>
> However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine.   Carpenter v. Marc Glassman, Inc. (1997), 124 Ohio App.3d 236, 240, 705 N.E.2d 1281; Henry v. Dollar General Store, Greene App. No.2002-CA-47, 2003-Ohio-206; Bumgarner v. Wal-Mart Stores, Inc., Miami App. No.2002-CA-11, 2002-Ohio-6856."

See, also, Oliver v. Leaf and Vine, Miami App. No.2004CA35, 2005-Ohio-1910, at ¶31

("'The determination of whether a hazard is latent or obvious depends upon the

particular circumstances surrounding the hazard.   In a given situation, factors may

include lighting conditions, weather, time of day, traffic patterns, or activities engaged in

at the time.'") (internal quotations omitted).

{¶ 21} "Attendant circumstances" may also create a genuine issue of material

fact as to whether a hazard is open and obvious.   See Lang at ¶24; Cummin v. Image

Mart, Inc., Franklin App. No. 03AP1284, 2004-Ohio-2840, at ¶8, citing McGuire v.

Sears, Roebuck & Co. (1996), 118 Ohio App.3d 494, 498, 693 N.E.2d 807.   An

attendant circumstance is a factor that contributes to the fall and is beyond the injured

person's control.   See Backus v. Giant Eagle, Inc. (1996), 115 Ohio App.3d 155, 158,

684 N.E.2d 1273. "The phrase refers to all circumstances surrounding the event, such

as time and place, the environment or background of the event, and the conditions

normally existing that would unreasonably increase the normal risk of a harmful result of

the event."   Cummin at ¶8, citing Cash v. Cincinnati (1981), 66 Ohio St.2d 319, 324,

421 N.E.2d 1275.   An "attendant circumstance" has also been defined to include any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." McGuire, 118 Ohio App.3d at 499.

{¶ 22} Attendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making.   See Id. at 498.   Moreover, an individual's particular sensibilities do not play a role in determining whether attendant circumstances make the individual unable to appreciate the open and obvious nature of the danger.   As the court explained in Goode v. Mt. Gillion Baptist Church, Cuyahoga App. No. 87876, 2006-Ohio-6936, at ¶25: "The law uses an objective, not subjective, standard when determining whether a danger is open and obvious.   The fact that appellant herself was unaware of the hazard is not dispositive of the issue.   It is the objective, reasonable person that must find that the danger is not obvious or apparent."  Thus, we use an objective standard to determine whether the danger associated with the condition was open and obvious.   Furthermore, the question of whether a danger is open and obvious is highly fact-specific.   Stanfield v. Amvets Post No. 88, Miami App. No. 06CA35, 2007-Ohio-1896, at ¶12; Henry v. Dollar General Store, Greene App. No.2002-CA-47, 2006-Ohio-206, at ¶16.

{¶ 23} In the case at bar, we agree with appellant that the danger associated with the sidewalk and handicap ramp was open and obvious.   A reasonable person who looked would have noticed the ramp-sidewalk configuration and would have taken care to avoid stepping off the sidewalk where it abuts the slowly-inclining handicap

ramp.   Nothing about this danger is hidden or concealed from view.   In fact, appellee had traversed this same route without incident on her way into the building.   Thus, she had an opportunity to observe the condition.   Moreover, no attendant circumstances rendered the condition less than open and obvious.   Appellee may have been moving to the side to allow another individual to pass, but this situation was not of appellant's creation and was a normal condition one could expect to encounter when walking on a sidewalk.   Thus, the presence of another passer-by does not constitute an "attendant circumstance" sufficient to create an issue of fact regarding the open and obvious nature of the danger.   See Stinson v. Kirk, Ottawa App. No. OT-06-044, 2007-Ohio-3465, at ¶26 (stating that the normal activities of a given area, "though possibly distracting, would not significantly enhance the danger of a minor defect in a sidewalk because it is not an unusual circumstance").

{¶ 24} Furthermore, to the extent that appellee asserts that the area had insufficient lighting due to shadows created during the daylight hours, we observe that: (1) a business owner has no affirmative duty to light walkways and public parking areas outside their buildings to accommodate invitees; and (2) darkness is always a warning of danger.   See Jeswald v. Hutt (1968), 15 Ohio St.3d 224, 239 N.E.2d 37, paragraphs two and three of the syllabus.   Thus, "[t]he amount of light in a given area is an open and obvious condition."   Swonger v. Middlefield Village Apartments, Geauga App. No. 2003-G-2547, at ¶12.   In the case at bar, if the area was as dark and shadowed as appellee claims, then such condition itself should have served as a warning to appellee to exercise caution and was an open and obvious danger of which she should have been aware.   See Gordon v. Dziak, Cuyahoga App. No. 88882, 2008-Ohio-570, at ¶50

(rejecting as "beyond reasonable comprehension" the "argument that an undisclosed presence of shadows near a residence could be dangerous" and stating that "a person should not be held liable where he or she had no control over shadows caused by the sun"); Swonger ("the person who disregards a dark condition does so at his or her own peril.").[3]

{¶ 25} Appellee asserts that despite the open and obvious nature of the hazard, appellant nonetheless was negligent for failing to comply with various provisions of the city code. Appellee essentially asserts that appellant's alleged violations of the city code constitutes negligence per se for which the open and obvious doctrine has no applicability. We disagree with appellee.

{¶ 26} First, the violation of an administrative rule does not constitute negligence per se. See Lang v. Holly Hill Motel, Inc., 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120. Second, the open and obvious doctrine may be asserted as a defense to a claim of liability arising from an administrative rule violation. See id. In Lang, the court held that a landowner may assert the open and obvious danger defense against a

---

[3] We additionally observe that cities ordinarily are not liable for minor defects encountered on sidewalks. See Kimball v. Cincinnati (1953), 160 Ohio St. 370, 373-374, 116 N.E.2d 708; Stockhauser v. Archidiocese of Cincinnati (1994), 97 Ohio App.3d 29, 33, 646 N.E.2d 198. The rationale for the rule is that a pedestrian should expect to encounter certain minor defects on a sidewalk, which relieves the property owner of a duty to warn. Id. Thus, the Ohio Supreme Court has held that if a sidewalk defect is less than two inches in height, then, in the absence of attendant circumstances, it is insubstantial and no duty exists. See Cash v. Cincinnati (1981), 66 Ohio St.2d 319, 321, 421 N.E.2d 1275; Shifflet v. Glouster Public Library (July 19, 2000), Athens App. No. 00CA01. In the case at bar, none of the parties presented any evidence regarding the measurements of the area of the sidewalk where appellee fell. Furthermore, we note that appellant disputes that the sidewalk contained a "defect," but instead alleges that the alleged "defect" was simply the design of the sidewalk.

negligence claim involving a building code violation.   The court explained:

> "Because administrative-rule violations do not create a per se finding of duty and breach of duty, the plaintiff must present evidence to establish those two prongs of the negligence test.   While a violation of the Building Code may serve as strong evidence that the condition at issue was dangerous and that the landowner breached the attendant duty of care by not rectifying the problem, the violation is mere evidence of negligence and does not raise an irrebuttable presumption of it.   As is the case with all other methods of proving negligence, the defendant may challenge the plaintiff's case with applicable defenses, such as the open-and-obvious doctrine.   The plaintiff can avoid such defenses only with a per se finding of negligence, which we declined to extend to this context in Chambers [v. St. Mary's School (1998), 82 Ohio St.3d 563, 697 N.E.2d 198]."

Id. at ¶21.   Consequently, appellee's claim that the sidewalk area violated certain city codes does not bar the application of the open and obvious doctrine.   See Dynowski v. Solon, 183 Ohio App.3d 364, 2009-Ohio-3297, 917 N.E.2d 286, at ¶33.

{¶ 27} Appellee additionally argues that even if R.C. 2744.02(B)(4) does not except appellant from the general grant of immunity, R.C. 2744.02(B)(2) or (5) provide an exception.   R.C. 2744.02(B)(2) and (5) state:

> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
> * * * *
> (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
> * * * *
> (5) In addition to the circumstances described in divisions (B)(1) to

(4) of this section, a political subdivision is liable for injury, death, or loss

to person or property when civil liability is expressly imposed upon the

political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code.   Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

**{¶ 28}** We reject appellee's claim that R.C. 2744.02(B)(2) applies for the same reasons we reject her claim that R.C. 2744.02(B)(4) applies.   The alleged danger was open and obvious, and, thus appellant cannot be liable under a negligence theory.

**{¶ 29}** Furthermore, R.C. 2744.02(B)(5) cannot apply because appellee failed to point to any provision of the Ohio Revised Code that imposes civil liability upon appellant.   The only arguably pertinent authority we have discovered is R.C. 3781.11(C) which provides:

> Any building, structure, or part thereof, constructed, erected, altered, manufactured, or repaired not in accordance with the statutes of this state or with the rules of the board, and any building, structure, or part thereof in which there is installed, altered, or repaired any fixture, device, and material, or plumbing, heating, or ventilating system, or electric wiring not in accordance with such statutes or rules is a public nuisance.

Nothing in this statute expressly imposes civil liability.   Cf. <u>Souther v. Preble Cty. Library, West Elkton Branch</u>, Preble App. No. CA2005-04-006, 2006-Ohio-1893, at ¶21, citing   <u>Day v. Middletown-Monroe City School Dist.</u> (July 17, 2000), Butler App. No. CA99-11-186.   "Consequently, R.C. 3781.11 does not trigger the R.C. 2744.02(B)(5)

immunity exception."   Id.

{¶ 30} In sum, we conclude that none of the R.C. 2744.02(B) immunity exceptions apply in the case at bar.   Appellant sufficiently demonstrated that it is entitled to judgment as a matter of law, and appellee failed to establish that any of the R.C. 2744.02(B) exceptions to R.C. 2744.02(A) immunity apply.   Consequently, we believe that the trial court erred by failing to grant summary judgment to appellant based upon statutory immunity.

{¶ 31} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's sole assignment of error and reverse the trial court's judgment.

> JUDGMENT REVERSED AND
> CAUSE REMANDED FOR
> PROCEEDINGS CONSISTENT
> WITH THIS OPINION.

Harsha, J., concurring:

{¶ 32} I concur in judgment and opinion except for its suggestion that the need for a factual inquiry converts the issue of duty from a purely legal question into one that demands resolution by the factfinder.   As I indicated in the concurring opinion in *Ray v. Wal-Mart Stores, Inc.*, Washington App. No. 08CA41, 2009-Ohio-4542 at ¶43:

> I believe we should consider "open and obvious" to be part of the legal question of duty so that courts decide it as a matter of law.   I realize many appellate courts, including ours, have deferred to the jury on this issue, but I do not think resolution of a factual aspect changes the overall character of the issue.   I am not aware of any Supreme Court case that has actually deferred to the jury.   To the contrary *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210 ¶22, *Mussivand v. David (*1989), 45 Ohio St.3d 314,318, *Wheeling and Lake Erie RR Co. v.*

> *Harvey* (1907), 77 Ohio St.3d 235, 240 and others hold that duty is a
> question of law.   Simply because resolution of a question of law involves
> consideration of the evidence does not convert the issue into a question
> of fact.   *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 68.   I
> view this issue as being similar to governmental immunity, i.e. it acts as a
> complete bar to being sued and is decided by the court, not the jury.   In
> other words, this question involves the "rules" of the game, and courts, not
> juries, decide the rules.

See, also, *Hallowell v. Athens Cty.*, Athens App. No. 03CA29, 2004-Ohio-4257 at ¶21.

And see the dissent in *Maccabee v. Mollica*, Athens Co. App. No. 09CA32,

2010-Ohio-4310 at ¶27 et seq., which addresses the purely legal nature of

governmental immunity inquiry.


## JUDGMENT ENTRY

It is ordered that the judgment be reversed and cause remanded for proceedings

consistent with this opinion.   Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike

County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

McFarland, P.J.: Concurs in Judgment & Opinion
Harsha, J.: Concurs with Concurring Opinion


                                                    For the Court

BY:_____
Peter B. Abele, Judge


NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.